**Don DRAKE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 41528.**

Court of Criminal Appeals of Texas.

Oct. 9, 1968.

Julius Glickman, Houston, for appellant.

Carol S. Vance, Dist. Atty., Phyllis Bell and Frank Puckett, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

OPINION

BELCHER, Judge.

The offense is robbery by assault; the punishment, seven years.

The appellant and Donna Drake were jointly indicted and tried, found guilty by a jury, and each elected to have the court assess the punishment.

As grounds of error the appellant contends that his arrest without a warrant was illegal, that the facts did not justify the conclusion that he was about to escape, and that evidence obtained by his illegal arrest was harmful and prejudicial to him.

The testimony of the state reveals that the assaulted party, Emilio Betancourt, met the appellant, Donna Drake, a sister of the appellant, and a Negro man in a tavern-pool hall where they visited at a table. These three persons were not previously known by Betancourt, and according to the

record the name of the Negro was never ascertained by Betancourt or the officers. After a brief time, Betancourt left the tavern going home and the three persons also left, apparently, following him. Later, when Betancourt had declined some of their suggestions they attacked him, the appellant hitting him in the face, striking him two or three times with a dagger, and then hitting him two or three times with a soft drink bottle which he had in the other hand. They stomped and hit Betancourt on the head and back, took his billfold containing twenty dollars and left. Betancourt, bleeding and with his clothing torn, went to a nearby residence, the officers were notified and came to the scene, and he described the assault and those who had attacked him to the officers.

Officer Rich, a state's witness, testified in part as follows:

"Q Officer, did I understand you to say you had a description of these people?

"A Yes, sir.

"Q After you had received this description you said you did not get a warrant?

"A No, sir.

"Q Did you feel you had time to get a warrant?

"A No, sir.

"Q Did you feel they might escape?

"A Yes, sir.

"Q Did the description you were given of these people fit the people you arrested?

"A Yes, sir.

"Q Did you get the descriptions from Emilio Betancourt?

"A Yes, sir, we did.

"Q And after you placed these people under arrest did you go to the police station with them?

"A Yes, sir, we had them outside the place where we arrested them and Mr. Betancourt came by. Somebody had picked him up and he stopped by and said this was the two whites involved.

"Q And you did go to the police station thereafter?

"A Yes, sir.

"Q Did you take the defendants Donna and Don Drake to the booking office?

"A Yes, sir.

"Q On your way to the booking office where did you park your car?

"A In the rear of the police station.

"Q As you were approaching the booking office did anything unusual happen?

"A Yes, sir, the male, Don Drake, broke and ran.

"Q Where did he run to?

"A He ran down from the station toward the bayou.

"Q Will you describe what happened there?

"A He ran across the parking lot and I hollered at him to stop and I pulled my pistol and shot over his head, and at this time he dropped to the ground and I arrested him again.

\*　　\*　　\*　　\*　　\*　　\*

"Q Did you talk with Emilio Betancourt that night?

"A Yes, sir.

"Q Then did you go to the pool room?

"A Yes, sir.

"Q What is the name of the pool room, if you know?

"A It doesn't have a name.

"Q When you went to the pool room, will you tell what you saw, first of

all, describe the pool room if you will?

"A It is primarily a beer joint—it is mostly colored in that area—and there is a pool table inside and I believe food is served.

"Q Is that place frequented by colored men?

"A Yes, sir, primarily.

"Q How many people did you see there that night?

"A There were probably between ten and fifteen there altogether when we arrived.

"Q Did you see any white people there?

"A Yes, sir, two.

"Q Who were they? You are talking about Don Drake and Donna Drake, sitting here by Mr. Nahas?

"A Yes, sir.

"Q Where were they sitting in there when you first saw them?

"A They were sitting about the center of the place.

"Q Were they at a table?

"A Yes, sir.

"Q Who else was there, if anyone?

"A There was a colored male sitting at the table with them when we first drove up.

"Q When you entered the place, what happened?

"A After we got out of the car all three of them got up from the table and the colored male ran out the back door and the white female went to the rest room and the white boy went over and started talking to some colored fellow who was in there.

"Q Did he preface his conversation with the colored man in any manner

whatsoever? Did he commit any particular acts?

"A He went over and shook hands with him after we came in the front door, and after we come in the front door he started to leave the place by the front door, and at this time we arrested him.

"Q Did you ever find out who this colored man was?

"A No, sir.

"Q Have you seen him since to your knowledge?

"A No, sir, we didn't get a good enough look at him to identify him. He went out the back door before we could get close enough to identify him.

"Q Did Donna Drake come out of the rest room?

"A Yes, sir, and we had her brother go ask her to come out."

 The facts and circumstances in evidence were sufficient to constitute probable cause and authorized the officers to arrest the appellant without a warrant for the offense of robbery by assault.

The admission of the testimony of appellant's flight immediately after his arrest under the evidence was not error. Crenshaw v. State, Tex.Cr.App., 389 S.W.2d 676.

Another ground of error urged is that the exclusion of testimony impeaching that of the assaulted party was harmful to the appellant.

The testimony offered pertained to the testimony of the assaulted party at the examining trial for this offense.

When the testimony was offered the following occurred:

"Appellant's Counsel: We take exception to the ruling of the Court, and offer

it on the bill for the purpose of impeachment of this witness.

"The Court: All right."

■ This ground of error cannot be appraised for the reason that said testimony is not contained in the record.

The judgment is affirmed.