Ozelle Petty **HONEYCUTT**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 45505.

Court of Criminal Appeals of Texas.

Oct. 3, 1973.

Weldon Holcomb, Tyler, for appellant.

Curtis L. Owen, Dist. Atty., and Charles Crow, Asst. Dist. Atty., Tyler, and Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for the felony offense of driving a motor vehicle upon a public highway while intoxicated. The punishment was assessed at five (5) years by the court following a verdict of guilty.

Initially appellant contends the trial court "erred in overruling motion to suppress evidence obtained by virtue of unlawful arrest without warrant and resulting unlawful search and seizure." The motion to suppress sought to exclude testimony of the officers as to appellant's condition at

time of arrest and results of the breathalyzer test.

Thus the facts become important in order to evaluate appellant's contention. David Anderson, owner of the Paco Industrial Tape and Label Company, testified that about 4:30 p. m. on November 11, 1970, his motor vehicle struck the rear fender of a Chevrolet automobile which had pulled away "fast" from a stop sign and into his path. The accident occurred at the intersection of Loop No. 323 and the Old Jacksonville Highway in Smith County. The Chevrolet did not stop and Anderson related that he followed it, observing it cross back and forth across the center line and go off on the shoulder of the road. He followed it until it stopped in front of a residence on either Ninth or Tenth Street in Tyler. There Anderson had a conversation with the driver whom he identified as the appellant. The appellant denied she had been involved in an accident. Her speech was slurred. To Anderson the appellant gave the appearance of being intoxicated, although she did not leave the car. When Anderson told her he was going to call the police she replied: "Go ahead, you son of a bitch."

Anderson then drove to a nearby store and called the police and returned to the residence in question within a period of ten minutes. The woman was not in the car.

Tyler City Patrolman John Beddingfield related that on the date in question he responded to the call made by Anderson and met him at the store from which the call had been made and then proceeded, at about 4:40 or 4:45 p. m., to the residence in question. Beddingfield further related that he knew from personal knowledge that this house was the residence of the appellant; that he observed damage to Anderson's car as well as to the appellant's car, which he recognized and which was still parked in front of the house. He revealed that Anderson reported to him as had the police broadcast that the appellant had been driving while intoxicated. He knew that the appellant had been previously convicted of driving while intoxicated.

After being joined by Officer Bragg, Beddingfield knocked on the door, shook the screen and tried to attract attention; but to no avail. Some five to eight minutes later the officers entered an unlatched screen door and found the appellant lying fully clothed and awake on a bed in the bedroom. She was placed under arrest, taken to the patrol car and then to the local Department of Public Safety office for a breathalyzer test to which she consented. Beddingfield testified her walk was unsteady, that he had to assist her, that her speech was slurred and that in his opinion she was intoxicated.

Officer Bragg generally corroborated Beddingfield's testimony. He related that in attempting to attract attention they knocked on a back window and had a conversation with her and knew she was in the house before they entered. Bragg expressed the opinion that the appellant was intoxicated.

John Hanna, highway patrolman, testified that he was a certified operator of a breathalyzer unit and that he administered a test to the appellant at 5:22 p. m. on the date in question and the result of the test was "0.22." Eddie Anderson, a chemist with the Department of Public Safety, interpreted the results of the test as showing that the appellant was intoxicated.

The appellant did not testify but called Henry Carsten, who related he was working on the roof of appellant's house on the afternoon in question and that he talked with her after her arrival home and he expressed the opinion that she was not intoxicated.

■ We begin consideration of appellant's contention with the familiar constitutional precept that peace officers should always obtain a warrant before an arrest

when possible. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).[1]

There are, of course, exceptions made to this general rule by the Code of Criminal Procedure in permitting arrests without a warrant under certain designated circumstances, but these statutes are given a narrow construction.[2]

In the instant case the State, in order to justify the warrantless arrest, relies upon Article 14.04, Vernon's Ann.C.C.P., which provides as follows:

> "Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."

In Vinson v. State, 138 Tex.Cr.R. 557, 137 S.W.2d 1048 (1940), it was held that defendant's arrest for robbery was illegal and evidence obtained as a consequence of the arrest should have been excluded where the arresting officer had "information" that someone had seen the defendant at a holdup, but the defendant was at his home and was not making any attempt to escape. See also Butler v. State, 151 Tex. Cr.R. 244, 208 S.W.2d 89 (1947).

Especially pertinent is Rippy v. State, 122 Tex.Cr.R. 101, 53 S.W.2d 619, 627

(1931), where the court in reversing a murder conviction and speaking through Judge Hawkins said:

> "It is not necessary to discuss whether circumstances discovered by a peace officer himself, and which lead him to believe that a party has committed a felony, may be substituted for the provisions of the statute which says that the information must reach the officer upon representations of a credible person."

Judge Hawkins continued:

> "That part of the statute which says that 'the offender is about to escape' is indispensable. That such condition did not exist in the present case seems to be without dispute in fact. At the time the officer went to appellant's house, appellant was partially undressed and in bed. In Cortez v. State, 44 Tex.Cr.R. 169, 69 S.W. 536, 539, it was said that it was not shown that Cortez was about to escape, but: '* * * On the contrary, the evidence is to the effect that he was at his home in the county, engaged in making a crop; and that, after the sheriff learned of his whereabouts on the morning of the homicide, he was then within six miles of the justice of the peace, and could have obtained a warrant had he so desired.' "

Imminent escape has long been held essential to a warrantless arrest under Ar-

---

1. "An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment. * * * * If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." Beck at 379 U.S. 96–97, 85 S.Ct. at 228–229.

2. "The provisions of the code providing for arrest without a warrant are founded in the law of necessity, that is, the necessity for prompt action in order to arrest or detain the offender so as to prevent his escape. * * * Therefore, despite obiter dicta expressions to the contrary in a few cases, the courts, both civil and criminal, have consistently said that the arrest of a citizen without a warrant is an unreasonable seizure of his person, unless it is expressly authorized by statute. * * * Such statutes are strictly construed and must always be subordinated to the constitutional guaranties against unreasonable seizure. Hence, if the situation that, it is claimed, authorizes an arrest without warrant does not come squarely within one of the statutory classifications, authority does not exist, even though it be made to appear before the arrest that the party has committed the identical crime for which he was arrested." 6 Tex.Jur.2d, Arrest, Sec. 12, pp. 148–149 (1959).

ticle 14.04, supra, and its precursor, Article 215, Vernon's Ann.C.C.P. (1925). Rutherford v. State, 104 Tex.Cr.R. 127, 283 S.W. 512 (1926); Gill v. State, 134 Tex.Cr.R. 363, 115 S.W.2d 923 (1938); Adams v. State, 137 Tex.Cr.R. 43, 128 S.W.2d 41 (1939); Vinson v. State, 138 Tex.Cr.R. 557, 137 S.W.2d 1048 (1940); and Woods v. State, 466 S.W.2d 741 (Tex.Cr.App. 1971).

■ Thus from the facts in the instant case it is apparent the officer received his information from a credible person,[3] but the information related to a misdemeanor offense. We need not determine if the officer's personal knowledge of a prior conviction was sufficient to satisfy the statutory requirement as to "a felony" or to determine whether without the officer's knowledge of appellant's car, house, etc., the information was sufficient as to identify the appellant, because we conclude that there was no showing the appellant was about to escape.

As in *Rippy* the appellant was home in bed with her shoes removed. The record reflects that Officer Beddingfield knew she lived there for more than a year. There was no evidence of an escape or an attempt to escape.

■ In accordance with the strict construction given exceptions allowing warrantless arrests, this court has always required a clear showing that the person arrested was about to escape. As is often said when considering an arrest without warrant, inarticulate hunches and suspicions are not enough to justify the arrest. See e. g. Brown v. State, 481 S.W.2d 106, 110 (Tex.Cr.App.1972); Tarwater v. State, 160 Tex.Cr.R. 59, 265 S.W.2d 83, 267 S. W.2d 410, 412 (1954).

Only recently this court stated "The constitutional validity of a warrantless arrest or search can only be decided in terms of the concrete factual situation presented by each individual case." Brown v. State, supra, at p. 109 of 481 S.W.2d. Therefore for the arrest in the instant case to show a compliance with Article 14.04, supra, the concrete factual situation must come squarely within the classification established by the statute. We cannot conclude the evidence shows the appellant was about to escape or that it was not possible to secure a felony arrest warrant under the circumstances presented.

We note that to support its contention that the arrest was authorized the State relies upon Drake v. State, 432 S.W.2d 906 (Tex.Cr.App.1968), and O'Neal v. State, 416 S.W.2d 433 (Tex.Cr.App.1967).[4] Both cases are distinguishable from the instant one. *Drake* does not specifically mention Article 14.04, Vernon's Ann.C.C.P., and it is not possible from the opinion to determine that the decision turned exclusively upon such statute. Further, the opinion reflects that arrests occurred after the suspects attempted to leave a tavern upon the arrival of the police and one of their companions actually succeeded in escaping. *O'Neal* turned on Article 14.04, supra, but the warrantless arrest occurred at night away from appellant's home the day following the commission of the rape when the car used by appellant and his companions was parked nearby. The facts supporting an "escape" were more concrete than in the instant case where the officer had only a suspicion appellant might escape while she was at home in bed during the afternoon.

For the reasons stated, the judgment is reversed and the cause remanded.

3. A credible person as used in the statute has been held to mean one worthy of belief. Beeland v. State, 149 Tex.Cr.R. 272, 193 S.W.2d 687, 689 (1946).

4. The conviction in O'Neal v. State, supra, was set aside in O'Neal v. Beto, 428 F.2d 1164 (5th Cir. 1970).