John Aruner FARMAH, Jr., Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–89–00364–CR, 01–88–00834–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

April 26, 1990.

---

James M. Seabolt, Houston, for appellant.

John B. Holmes, Dist. Atty., Katherine Haden and Vic Wisner, Asst., for appellee.

Before SAM BASS, DUNN and O'CONNOR, JJ.

## OPINION

DUNN, Justice.

A jury found appellant guilty of aggravated sexual assault on September 7, 1988 and sentenced him to a 30–year prison term. On September 29, 1988, the court found appellant guilty of aggravated robbery and imposed a five-year prison sentence. The parties stipulated that the trial court would consider all evidence, trial

records, and exhibits produced from the sexual assault hearing.

On November 25, 1987, in West University Place in Harris County, complainant was accosted at gunpoint by two males who forced her into an automobile, that was driven by a third male. She was raped and robbed by the three males.

In points of error one and two appellant contends that the trial court erred in overruling the motion to suppress the written confession because it was unlawful. Appellant argues that the State did not establish probable cause for the warrantless arrest, nor did it establish satisfactory proof that exigent circumstances made it unnecessary to obtain a warrant.

On appeal, challenges to the voluntariness of a confession generally should be directed to whether the court abused its discretion in one of the findings or whether the court properly applied the law to the facts. *Sinegal v. State,* 582 S.W.2d 135, 137 (Tex.Crim.App.1979). If the trial court's findings of fact are supported by the record, this Court's only inquiry will be whether the trial court improperly applied the law to the facts. *Burdine v. State,* 719 S.W.2d 309, 318 (Tex.Crim.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Johnson v. State,* 698 S.W.2d 154, 159 (Tex.Crim.App.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). Because the trial court is the sole trier of fact at a motion to suppress hearing, the Court is not at liberty to disturb any finding which is supported by the record. *Green v. State,* 615 S.W.2d 700, 707 (Tex.Crim.App.1980), *cert. denied,* 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981).

More specifically, appellant argues that the State failed to produce the initial arresting officer, Horn, who detained appellant. Appellant also claims that Johnson did not have probable cause to believe appellant was a suspect in the case, nor probable cause to arrest him without a warrant under Tex.Code Crim.P.Ann. art. 14.04 (Vernon Supp.1990). Appellant admits that Johnson may have had "satisfactory proof" that a felony had been committed, but argues that Horn, the initial arresting officer, did not have probable cause to arrest him.

The written confession that appellant complains of is as follows:

A. Last Wednesday I was at Russell's house when Kiko and James came and asked if they could use my car. I didn't know them that well, but Russell said they were okay, so I told them I would take them. We went to West University and saw a lady walking down the street. They told me to stop, they wanted to ask the lady something. Before I knew it, they snatched the lady and had her in the car. James was in the back seat holding her down and Kiko was in the front reaching over the back to help James. She was kicking and trying to get her legs out the window. James was holding the gun on her and told her if she didn't do what he wanted he was going to blow her—"

Q. (Prosecutor) Read it as it is.

A. He was going to blow her motherfucking head off. We drove around, and James and Kiko went through the purse. Then they started taking off her clothes. Kiko crawled over into the back seat. James put a jacket over her head, and Kiko raped her first. After that, James raped her. Then Kiko switched places with me, and I acted like I was raping her, but I didn't even put it in. They were watching me so I had to do something, but the jacket was covering me so they couldn't tell. We took her credit cards and checks and let her out. We gave her purse back. Then we went back to Westheimer.

Appellant and Johnson were the only witnesses to testify at the hearing on the motion to suppress. Appellant testified that he was on Westheimer in front of McDonald's or Church's. He was sitting on the back of the car which had broken down. An HPD officer (Horn) pulled up behind him, got out of his car, spoke to him, and then got back into his car. Horn got out a second time, handcuffed him, and placed him in the back of his police car. Not long thereafter, Johnson came and picked him up. Johnson took him to the

West University police station where he stayed until he signed a statement. Appellant stated that he was driving a 1974 two-door white and maroon Buick with license plate number 783 QVE; that the car was not registered in his name at the time he was taken into custody by the HPD officer; and that there was no way the officer could have known that he had just bought the vehicle.

Johnson testified that he was in charge of investigating a sexual assault which occurred in West University on November 25, 1987. The information available to him was that the complainant was abducted by three black males as she walked down the street; that the three black males raped her repeatedly as they drove through the area; that they robbed the complainant of her money and credit cards; that she did not know their names, nor was she able to give a license plate number of the vehicle; that she gave a description of the automobile, i.e. a used late 60's or early 70's model Buick with a white top over a maroon bottom. Johnson stated that on December 3, 1987, he received a call from a United Parcel Service driver (UPS) who said when he heard about the assault, he realized that he had witnessed the abduction of the complainant; that the description given by the driver was consistent with the description given by the complainant; that the driver witnessed two black males force the complainant into the car; and that he recorded the license plate of the automobile which he gave to Johnson. Johnson further testified he felt the information was reliable because it came from a UPS employee and it was consistent with the complainant's statement. After receiving this information, Johnson stated he ran a registration check on license plate number, 783 QVE, the number he had received from the UPS driver. He found that it was the license number of the Buick described by the UPS driver and the complainant. It was registered to a Joan Mosely. He contacted the registered owner, Mosely, who stated that she sold the vehicle several years before, but did not have the name of the person she sold it to. On receiving this information, Johnson stated that he entered all the information, including the registered owner of the vehicle, into the national crime information center, which distributes information to HPD and all other law enforcement agencies in Harris County.

On December 4, 1987, one day after registering the information with the crime center, an HPD dispatcher contacted him and told him that an HPD officer had reported he had the vehicle and an accompanying person. Johnson then proceeded to the corner of Westheimer and Graustark where the vehicle was located. He saw the vehicle bearing license plates consistent with the description he entered into the central crime center. Horn was detaining appellant until Johnson arrived. Johnson took appellant into custody after an initial brief questioning in which he asked appellant for his address. Appellant was not able to give a "fixed address," but claimed he owned the vehicle. Johnson stated he was afraid to release appellant while he secured an arrest warrant because appellant knew he was a suspect in a sexual assault investigation and would not give him a fixed address where he could be located, and Johnson knew of no ties appellant had in Harris County. Johnson testified that he believed it would have been irresponsible to release appellant under these circumstances. He placed appellant in his car and took him to the West University police department. He stated it was his intent to learn of appellant's whereabouts during the commission of the assault.

Johnson stated that when he arrived at the West University police department, he read appellant his *Miranda* warnings and talked with him for about two hours; that as they discussed the case appellant continued to give additional facts that led him to believe that appellant was involved in the assault; that the complainant was unable to identify appellant from a photo spread; however, Johnson told appellant that the complainant had identified him. During the entire process appellant was given food, drinks, and was not denied any request. He was not promised anything for his written statement. The statement was given 3 to 4½ hours after arriving at the

police station and was dictated to him because appellant claimed his handwriting was illegible. Johnson testified that the *Miranda* and statutory warnings were contained in the statement; that he had orally read appellant his statutory warnings earlier and repeated the warnings to him when he read the statement. Johnson further testified he had appellant acknowledge that he understood the warnings and initial each element of the warning on the statement.

Following the hearing on the motion to suppress, the trial court made the following fact findings and conclusions of law regarding probable cause for arrest and voluntariness of statement:

### Findings of Fact

(1) The [d]efendant, John Aruner Farmah, Jr. was in possession of a 1974 Buick 2 door, colored white over maroon, Texas Registration 738 QVE, when detained by Houston Police Officer Horn on December 4, 1987 at the intersection of Westheimer and Graustark.

(2) At the time, West University Police Sergeant J.B. Johnson took custody of the [d]efendant from Officer Horn on December 4, 1987, Sgt. Johnson was aware of no facts concerning the [d]efendant's address, employment or ties to Harris County other than the [d]efendant's possession of the aforesaid vehicle, which was not registered to the defendant.

(3) Sergeant Johnson had reason to believe that the [d]efendant owned the vehicle used, and met the general description of a suspect involved in an abduction and sexual assault of [complainant] on November 25, 1987 in West University Place.

(4) Neither Officer Horn nor Sergeant Johnson had a warrant for the [d]efendant's arrest at the time the [d]efendant was placed in custody.

(5) The [d]efendant was in custody of Sergeant Johnson for approximately four (4) hours prior to the the defendant signing a written confesion. The [d]efendant received his statutory warnings, both orally and in writing prior to the time a written statement was taken. The [d]efendant was fed and adequately cared for by Sergeant Johnson prior to the time the statement was taken.

(6) The written statement was taken after Sergeant Johnson falsely represented to the [d]efendant that the complainant had identified the [d]efendant in a photo spread.

(7) The false representation made to the [d]efendant by Sergeant Johnson was not one calculated to produce an untruthful confession.

(8) The [d]efendant is able to read, write and understand the English language, although his grammar and spelling are poor.

(9) The contents of the [d]efendant's statements (SX–1) is the [d]efendant's version of what happened as typed out by Sergeant Johnson.

(10) The [d]efendant read and understood the contents of his statement (SX–1) before voluntarily signing the same.

### Trial Court's Conclusions of Law Regarding Probable Cause To Arrest Defendant

West University Police Sergeant Johson had probable cause to place the [d]efendant in custody on December 4, 1987. The lack of information concerning the [d]efendant and distinct possibility that the [d]efendant would flee once notified that he was a suspect in an Aggravated Sexual Assault, acted as an exigent circumstance as set forth in Sec. 14.04, Texas Code of Criminal Procedure and thus an arrest warrant was unnecessary. Further, the arrest of the [d]efendant was not violative of the [d]efendant's rights under the fourth and fourteenth amendments of the United States Constitution and Art. 1 Sec. 9 of the Texas Constitution.

### Trial Court's Conclusions of Law Regarding Voluntariness of Arrest

The entire written statement made by the [d]efendant John Aruner Farmah, Jr. during the interview with Sergeant Johnson was given after the [d]efendant

knowingly, intelligently, and voluntarily waived his rights to silence and counsel contained in Article 38.22, Section 2, V.A. C.C.P. Further, the taking of said written statement did not violate the [d]efendant's rights under the fifth, sixth, and fourteenth amendments of the United States Constitution and Art. 1, sec. 10 of the Texas Constitution.

We will review the record to determine if the trial court improperly applied the law to the facts.

Article 14.04 provides that when a felony has been committed:

Where it has been shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

TEX.CODE CRIM.P.ANN. art. 14.04 (Vernon Supp.1990).

The first prong of article 14.04 requires that the officer have "satisfactory proof" that a felony has been committed by an offender. Probable cause to arrest a person is present when there are facts and circumstances within the officer's knowledge and of which he has reasonable trustworthy information that would warrant a reasonable man in believing that a particular person has committed or is committing a crime. *Webb v. State*, 760 S.W.2d 263, 274 (Tex.Crim.App.1988), *cert. denied*, — U.S. ——, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989). In *Esco v. State*, 668 S.W.2d 358, 360 (Tex.Crim.App.1982), the court held that probable cause to arrest the defendant developed from a teletype that was based on the witnesses' description of the offender and the automobile he was driving. *See also Law v. State*, 574 S.W.2d 82, 84 (Tex. Crim.App.1978) (the court held that there was probable cause to arrest, where information was relayed to another officer that a felony had been committed; that appellant fled the scene in his car; a description of the car was given; and appellant was apprehended some six miles from the scene of the incident); *Tarpley v. State*, 565 S.W.2d 525, 529 (Tex.Crim.App.1978) (the court held that an officer who does not himself possess probable cause for making a warrantless arrest may act on the basis of information relayed to him by another officer requesting an arrest be made).

◼ In this case, Johnson was aware that a felony had been committed by three black males some nine days earlier, and that a maroon and white car with license tag number 738 QVE was involved in the commission of the crime. Appellant was apprehended by HPD a day after the UPS driver gave Johnson the license plate number of the car involved in the commission of the offense. Horn received information from the HPD dispatcher regarding the sexual assault by three black males. The vehicle appellant was driving was not registered to him and was the automobile involved in the sexual assault. The fact finder could infer that Horn, after speaking with the HPD dispatcher, was justified in detaining appellant under these circumstances until Johnson arrived. Appellant matched the physical description given by the complainant, and was in a white and maroon car which belonged to him. These facts are sufficient to find that Horn had probable cause to believe that appellant had committed an offense and therefore was justified in detaining appellant until Johnson arrived.

The second prong of article 14.04 requires that there be some evidence amounting to "satisfactory proof" that the defendant is about to escape so that there is no time to procure a warrant.

Warrantless arrests have been upheld where an officer establishes satisfactory proof that a suspect is about to escape. *Dejarnette v. State*, 732 S.W.2d 346, 351– 52 (Tex.Crim.App.1987). In evaluating whether there is satisfactory proof that the defendant was about to escape, factors considered by the *Dejarnette* court were: (1) some evidence amounting to satisfactory proof that defendant was about to escape, related by a credible person to an officer or observed by the officer himself, (2) appellant's discovery of police pursuit, (3) proximity in time to the crime, and (4) location

of the arrest, i.e. public street versus private residence. *Hardison v. State*, 597 S.W.2d 355, 357 (Tex.Crim.App.1980). Thus we must look at all the factors involved and their relationship to each other to see if there is some evidence amounting to satisfactory proof that defendant was about to escape, and that the officers did not have sufficient time to obtain a warrant. *Dejarnette*, 732 S.W.2d at 352–53.

■ Applying the standard of the *Dejarnette* case, the record indicates that appellant, a black male, was found by Horn in the "wanted" vehicle, on a public street. He was discovered within one day after the UPS driver informed Johnson of the license plate number of the "wanted" vehicle. He was not the registered owner. Appellant had told the officer that he had been living with friends the last couple of days, he was unemployed, and could not give a "fixed address." Appellant was also informed that he was a suspect in a rape case. As to the proximity in time of the arrest to the crime, it is true that appellant was arrested in an area away from the crime nine days after the alleged rape and robbery of the complainant, but the arrest was within one day of the police receiving information regarding the license number of the "wanted" vehicle. The evidence is sufficient to support the officers belief that appellant might have escaped had he not been taken into custody.

Included in this point, appellant argues that in the event this Court determines appellant's arrest was unlawful, we should consider whether the written confession was voluntary, so as to attenuate the taint of an illegal arrest. In cases where the initial arrest has been declared illegal, the courts in determining whether the taint from the arrest has been purged after a confession has been given, apply several factors taken from *Brown v. Illinois*, 422

U.S. 590, 603–604, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975). These factors are: (1) whether *Miranda* warnings are given; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the officer's misconduct. *Self v. State*, 709 S.W.2d 662, 666–68 (Tex. Crim.App.1986). In *Self*, 709 S.W.2d at 668, the court held that defendant's arrest was not in accordance with state law; however, the taint of the arrest was overcome.[1] *But see Beasley v. State*, 728 S.W.2d 353, 355–56 (Tex.Crim.App.1987).[2]

■ In this case, appellant was given his *Miranda* warnings when he first arrived at the West University police station and also prior to his confession. He also signed a written statement informing him of his constitutional rights, which he knowingly waived. The statutory warnings were read to appellant, and appellant initialed each element of the warning. There was a two-hour period between the arrest and the confession, during which appellant continued to deny his involvement in the crime. There was an intervening circumstance in this case (appellant was told by Johnson he had been identified by the complainant, although she had not been able to identify him) that might have caused appellant to confess to his involvement in the offense. However, trickery or deception does not render a confession involuntary, unless the method used was calculated to produce an untruthful confession or was offensive to due process. *Snow v. State*, 721 S.W.2d 943, 946 (Tex.App.—Houston [1st Dist] 1986, no pet.); *Dotsey v. State*, 630 S.W.2d 343, 349 (Tex.App.—Austin 1982, no pet.). In addition, there was no indication of police misconduct from the statement of facts. In fact, Johnson testified that appellant was allowed to eat, and at no time was

1. *Miranda* warnings were given to appellant three times; there was a two-hour lapse between the arrest and the confession; there were no intervening circumstances, nor was the conduct of the police purposeful or flagrant.

2. The court in *Beasley* found that the illegal arrest tainted the admissibility of the confession, because the circumstances were not exigent; there was a seven-hour lapse between the arrest and the confession; and there were no intervening circumstances. *See also Stanton v. State*, 750 S.W.2d 375, 378 (Tex.App.—Fort Worth 1988, no pet.) which stated that it impliedly overruled the decision in *Self*, because of the different conclusions reached by the court in *Beasley* and *Self*.

he denied food, other requests, or promised favors in exchange for his statement.

In balancing the above factors, the fact that appellant was given his *Miranda* warnings, and there was an absence of flagrant police misconduct outweighs the presence of an intervening circumstance and the four-hour lapse between the arrest and confession. *See Bell v. State,* 724 S.W.2d 780, 788–89 (Tex.Crim.App.1986), *cert. denied,* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987).

Appellant's first and second points of error are overruled.

In appellant's third point of error, he argues that his fifth amendment right was violated, because the State used coercive means to obtain the statement. The same law, applicable to points one and two, applies to appellant's third point of error.

Although appellant testified during the motion to suppress hearing, he did not raise an issue regarding voluntariness. Nevertheless, appellant now argues that his confession was not voluntary, but obtained through the use of coercion, and that the issue of voluntariness was raised through the cross-examination of Johnson, who testified that he lied to appellant, about being identified by the complainant, in order to get him to tell the truth. Appellant also argues that the statement was involuntary, because of appellant's prior mental illness. In addition, appellant argues that because the statement of confession reflects appellant's inability to write the English language well, the issue of voluntariness was raised.

■ Appellant's testimony did not indicate that his confession was obtained by coercive means. In fact, the testimony showed that appellant was not physically abused, promised favors in exchange for the testimony, nor refused requests for food or other necessities. Appellant's confession does not appear to have resulted from any coercive tactics, but rather from Johnson's false representation that he had been identified by the complainant.

The voluntariness of a statement is not destroyed, and a confession induced by de-ception or trickery is not inadmissible, unless the method used was calculated to produce an untruthful confession or was offensive to due process. *Snow,* 721 S.W.2d at 946; *Dotsey,* 630 S.W.2d at 349. In *Dotsey,* a policeman's statement that he had information from an employee of the complainant, that appellant was involved in the offense, did not impair the voluntariness of the confession. In our case, Johnson testified that the purpose of his false representation to appellant was to get him to admit his involvement in the offense. Prior to the confession, Johnson stated appellant had denied his involvement in the crime; however, he had given him enough facts consistent with the complainant's statement, to lead him to believe appellant was involved in the offense. We hold that the trial court, as the sole trier of fact on the issue of voluntariness, did not abuse its discretion in concluding that the confession was voluntary.

■ Appellant further contends that because of his mental illness, he was psychologically coerced into signing the confession. Appellant's mother testified that he had been treated for a mental disorder two years prior to the offense, and that he was still under medication. Individual characteristics of the appellant, such as mental illness, are factors that bear on voluntariness. *Page v. State,* 614 S.W.2d 819, 819–20 (Tex.Crim.App.1981). In *Berlanga v. State,* 696 S.W.2d 425, 430 (Tex.App.—San Antonio 1985, no pet.), the appellant testified that at the time of the offense he was under a doctor's care, and at the time of the confession he did not understand what was occurring. Nevertheless, the *Berlanga* court found that the statement was given voluntarily, and was admissible in evidence. Appellant's statement was admissible, because there was no evidence produced at trial that appellant, at the time of the confession, was having mental problems, or did not understand the nature of the confession.

■ Appellant's final argument under this point is that his inability to write the English language well raises the issue of voluntariness. Johnson testified that ap-

pellant appeared to understand TEX.CODE CRIM.P.ANN. art. 38.22 (Vernon Supp.1990) warnings that were given orally and in writing. Although appellant testified that he did not write well, it does not appear from the testimony that he was not able to understand his conversation with Johnson. Johnson testified that after the statement was typewritten, it was read by appellant and acknowledged by his initials. Appellant has not shown that his inability to write the English language affected his capacity to make a voluntary confession.

In conclusion, the trial court's findings are supported by the record, and are not in violation of article 38.22, or the fifth, sixth, or fourteenth amendments of the United States Constitution. Thus, the trial court did not abuse its discretion in admitting the written confession into evidence.

Appellant's third point of error is overruled.

In appellant's fourth point of error, he contends that the trial court erred in failing to submit the issue of voluntariness to the jury, because such submission was required by law.

We will first consider this issue from a procedural standpoint. Appellant made an oral request to the court that an issue be submitted to the jury on the voluntariness of the confession, which was overruled. Article 36.15 of the Texas Code of Criminal Procedure provides in part:

> Before the court reads his charge to the jury, counsel on both sides shall have a reasonable time to present written instructions and ask that they be given to the jury. The requirement that the instruction be in writing is complied with if the instructions are dictated to the court reporter in the presence of the court....

TEX.CODE CRIM.PROC.ANN. art. 36.15 (Vernon Supp.1990).

■ Because appellant failed to submit a written instruction to the court or to dictate in the record the specific instructions, it is not possible for this Court to review whether an omitted instruction should have been included in the jury charge.

■ We will now review the record to see if it raises the issue of voluntariness, which requires an instruction to the jury. In *Brooks v. State*, 567 S.W.2d 2, 3 (Tex. Crim.App.1978), the court held that only when the defense presents some evidence that a confession is not voluntary is the defendant entitled to an instruction on voluntariness. *See also McDonald v. State*, 631 S.W.2d 237, 239 (Tex.App.—Fort Worth 1982, no pet.). However, in *Moon v. State*, 607 S.W.2d 569, 570 (Tex.Crim.App.1980), the court held that the trial court did not err where the charge given to the jury was adequate to protect appellant's rights. In this case, there is some evidence that the confession was involuntary; however, the instruction to the jury adequately informed the jurors that if they found that the confession was not voluntarily given, they were to disregard the confession and not consider it for any purpose nor any evidence obtained as a result therefrom. Therefore, the trial court's instruction was adequate to protect appellant's rights.

Appellant's fourth point of error is overruled.

■ In appellant's fifth point of error, he contends that the trial court erred in denying his motion for mistrial, after the State committed prosecutorial misconduct, which caused irreversible harm. Appellant's brief refers to statements made during the punishment phase of the jury trial on sexual assault. The questioning of the complainant by the State is as follows:

Q. Were you worried at the time or are you still worried at this time about the possibility of AIDS?

Defense: Objection. That is highly improper and prejudicial.

State: I believe it's a consequence of the offense, your honor. I believe it admissible at punishment.

Defense: There is absolutely no evidence in this case that the Defendant has ever been infected with AIDS. We object to it strenuously and ask the court to instruct the jury not to consider it.

The Court: The jury will not consider it.

Defense: Is the objection sustained?

The Court: Yes it is.

Defense: Move for a mistrial.

The Court: Overruled.

We will review the record and determine if the court's instruction to the jury cured the asking of the prejudicial question. Generally, the law in Texas provides that the asking of an improper question will not constitute reversible error, and may be cured by an instruction to disregard. *Brown v. State*, 692 S.W.2d 497, 501 (Tex. Crim.App.1985). The exception to this rule exists where the question is without evidentiary foundation, and is clearly calculated to inflame the minds of the jury, such that it is impossible to withdraw the impression produced in their minds. *White v. State*, 444 S.W.2d 921, 922 (Tex.Crim.App. 1969). In this case, the question asked of the complainant by the prosecutor went unanswered; thus, it is not likely that the jury's minds were so inflamed that the instruction to disregard did not remove the statement from their minds.

Appellant's fifth point of error is overruled.

The judgment of the trial court is affirmed.

O'CONNOR, J., dissenting.

O'CONNOR, Justice, dissenting.

I dissent. The issue here is whether the State carried its burden of proof to support the two warrantless arrests, and whether the confession made after the arrests was tainted by the illegality of the arrests.

On the morning of December 4, 1987, John Aruner Farmah, Jr., appellant, who was driving a two-toned Buick automobile, had car trouble and pulled to the side of the street. Appellant had just purchased the automobile and it was not registered in his name. As he was sitting on the back of the car, Officer Horn of the Houston Police Department (HPD), pulled up behind him. Officer Horn spoke with appellant, returned to his car, and then placed appellant under arrest. Officer Horn handcuffed appellant and put him in the back of his police vehicle.

About 11:30 a.m., the same day, Officer Johnson of the City of West University Place Police Department (WUP PD), arrived at the scene of the arrest. Officer Horn turned appellant over to Officer Johnson, who transported appellant to the police station in the City of West University Place. Officer Johnson did not take appellant before a magistrate.

At the police station, Officer Johnson questioned appellant about the crime. Appellant denied he was involved. Officer Johnson continued with the questions. About two and a half hours later, Officer Johnson took appellant's photograph and presented it to the victim, along with other photographs. She did not identify appellant. Although the victim was not able to identify appellant, Officer Johnson resumed the interrogation of appellant by informing him that he had been identified. After that, about four hours after the interrogation began, appellant confessed to the crime. At 4:10 p.m. that afternoon, appellant signed a written confession. At the suppression hearing, Johnson testified appellant was not free to leave the WUP PD during the four hours he was held there.

Ms. Lane, appellant's mother, is a registered nurse at Methodist Hospital. She testified that appellant was discharged in 1986 by the Marine Corps because of mental problems. He was diagnosed as a paranoid schizophrenic. After his discharge, he spent five months in a mental hospital in San Antonio. When he returned to Houston, he lived with his parents. Since his discharge, appellant was required to take the medication Navan for his mental condition. Ms. Lane testified it calms and relaxes him. Once, when he did not take his medication, he had to be hospitalized. Without his medication, Ms. Lane testified, he would be paranoid, that is, afraid of people.

I. The arrests.

In points of error one and two, appellant contends that the trial court erred in overruling the motion to suppress the written confession, because his arrests were unlaw-

ful.[1] Appellant argues that the State did not prove that exigent circumstances obviated the need for an arrest warrant. I agree.

I think the connection between appellant and the crime was too tenuous to support a warrantless arrest; there was no reason for the second officer to think appellant was about to escape; and, there was no evidence the second officer did not have time to get a warrant. I would sustain appellant's first point of error and hold that the State did not carry its burden to prove there was probable cause for either of the two arrests.

### A. The standards of review.

The purpose of the fourth amendment of the United States Constitution, and article I, section 9, of the Texas Constitution, is to protect the innocent and guilty alike from arrest based upon suspicion, rather than upon proof of reasonable grounds. *Wilson v. State*, 621 S.W.2d 799, 803 (Tex.Crim. App.1981). Arrest on mere suspicion collides violently with the right of liberty. *Id.*

The rule is: A police officer must obtain an arrest warrant before taking a person into custody. *Dejarnette v. State*, 732 S.W.2d 346, 349 (Tex.Crim.App.1987). A collateral canon to that rule is: A warrantless arrest is presumed unreasonable. *Wilson*, 621 S.W.2d at 803–804. There are statutory exceptions to the rule that a police officer must obtain an arrest. *Fry v. State*, 639 S.W.2d 463, 465 (Tex.Crim.App. 1982).[2] Only if a warrantless arrest fits within one of the statutory exceptions is it reasonable.

At trial, the burden is on the State to show that a warrantless arrest comes within one of the statutory exceptions to the general rule that such arrests are unreasonable. *Beasley v. State*, 728 S.W.2d 353, 355 (Tex.Crim.App.1987). If an arrest is illegal, the court must exclude any evidence that resulted from the arrest, unless the

State proves the evidence is not tainted by the illegality of the arrest. *Id.* at 355–56.

If a defendant raises a question about the voluntariness of a statement made to the police, the trial court must conduct a hearing out of the presence of a jury. TEX. CODE CRIM.P.ANN. art. 38.22 (Vernon 1979). If the court denies the motion to suppress, the court must make findings of fact to support his order overruling the motion to suppress. TEX.CODE CRIM.P.ANN. art. 38.22, § 6 (Vernon 1979).

On appeal, we review the findings of the trial court to determine if they are supported by the evidence. *Green v. State*, 615 S.W.2d 700, 707 (Tex.Crim.App.1980). If the findings are supported by the evidence, we review the trial court's conclusions to see if the court properly applied the law to the facts. *Burdine v. State*, 719 S.W.2d 309, 318 (Tex.Crim.App.1986).

### B. The trial court's findings.

After the hearing on the motion to suppress, the trial court entered findings of fact that: (1) appellant was in possession of the Buick automobile when he was detained by Officer Horn; (2) when Officer Johnson took custody of appellant, he did not know any facts about appellant's address, employment or ties to Harris County; (3) Officer Johnson had reason to believe that appellant owned the Buick and met the descriptions of the suspect involved in the sexual assault; (4) neither officer had a warrant; (5) appellant was in Johnson's custody about four hours before he confessed; (6) appellant made the written confession after Johnson falsely told him that the victim had identified him; (7) the false representation was not made to produce an untruthful confession. On these findings, the trial court held that Officer Johnson had probable cause to arrest appellant because of Johnson's

1. The majority states that "Appellant ... did not raise an issue regarding voluntariness [of the confession]." Op. at 672. In appellant's motion to suppress, he stated: "[the statements made to the West University police] were not made freely and voluntarily."

2. See TEX.CODE CRIM.P.ANN. Art. 14.01, 14.02, 14.-04, 18.16 (Vernon 1977) and TEX.CODE CRIM.P. ANN. art. 14.03 (Vernon Supp.1990).

lack of information concerning [appellant] and distinct possibility that [appellant] would flee once notified that he was a suspect.

The trial court also found that the written statement made by appellant was given after he knowingly, intelligently, and voluntarily waived his rights.

### C. The first arrest.

Appellant argues that Officer Horn, the one who made the first arrest, did not have probable cause to arrest appellant without a warrant. I agree. I think the first arrest does not pass constitutional muster for two reasons: (1) the trial court did not make any finding about the first arrest; and, (2) even if it had, there was no evidence to support it.

### 1. No finding on the first arrest.

The trial court did not make a finding about the first arrest. The majority justifies the first arrest without specifically saying why. The majority cites *Tarpley v. State*, 565 S.W.2d 525, 529 (Tex.Crim.App. 1978), for the proposition that an officer, who does not himself possess probable cause to make a warrantless arrest, may act on information relayed to him by another officer requesting that an arrest be made. I agree with the principle; I disagree that it applies here.

There is no evidence that Officer Horn relied on *any* information to arrest appellant. All we know about Officer Horn's actions came from the testimony of appellant: Officer Horn drove up behind his stalled car; got out of his vehicle; talked to appellant; returned to his vehicle; arrested appellant. Nothing in that evidence suggests why Officer Horn arrested appellant.

There was no, repeat *no*, evidence that Officer Horn relied on any information relayed to him about the Buick automobile with the license number 738 QVE. Officer Johnson testified he did not talk to Officer Horn until he met him at the Westheimer arrest scene. At that time, appellant was already under arrest. Nothing Johnson could have told Horn, after appellant was already under arrest, could justify the initial arrest.

The majority builds inference upon inference to reach its unstated conclusion that Officer Horn relied on information relayed to him from Johnson to make the arrest. It goes this way. Inference 1: When Officer Horn walked back to his car, he used the police radio. Inference 2: When Officer Horn used his radio, he called his dispatcher. Inference 3: When Officer Horn contacted the dispatcher, he asked the dispatcher about a vehicle with license plate number 738 QVE. Inference 4: The dispatcher relayed information from Officer Johnson that he should hold the vehicle with license plate number 738 QVE. Inference 5: Officer Horn arrested appellant, relying on the information relayed from Officer Johnson.

No evidence of probable cause was presented to the court to justify the first arrest. We should follow the same principles we applied in *Lewis v. State*, 737 S.W.2d 857, 861 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd), and hold the first arrest was illegal. If the first arrest was illegal, it cannot be legitimated by a second officer's arrest. It would not matter, therefore, if there were probable cause for the second arrest. But, because the majority deals with the second arrest, I will also address it.

### D. The second arrest.

Did Officer Johnson of the WUP PD, have the authority to make a second warrantless arrest of appellant? We should determine if the arrest meets all the conditions set out in article 14.04. The majority concentrates only on the second of these conditions.

Article 14.04, TEX.CODE CRIM.P.ANN. (Vernon 1977), provides that a peace officer may make a warrantless arrest if the officer has satisfactory proof: (1) that a felony was committed by the accused; (2) that the accused is about to escape; and (3) there is no time to procure a warrant.

1. Did the accused commit a felony?

The State must prove that a felony was committed *and* there is probable cause to believe the defendant committed it. Officer Johnson knew a felony had been committed. The issue is whether Johnson had any information that appellant might have been one of the three men who committed the crime.

All Johnson knew about the identity of the three men who committed the sexual assault, was that they were African–Americans and were in a maroon-over-white Buick automobile of undetermined model, whose license plate was probably 738 QVE. Johnson had no other information about their identity or description. I do not think article 14.04 permitted the police to make a warrantless arrest of any black man driving a maroon-over-white Buick with license plate number 738 QVE.

2. Was the accused about to escape?

The majority focuses on Officer Johnson's claim that appellant was about to escape. I will analyze the information under the majority's four factors.

### a. Evidence of imminent escape.

The courts have held that the officer should have more than an inarticulate hunch that a defendant is about to escape. *Honeycutt v. State*, 499 S.W.2d 662, 665 (Tex.Crim.App.1973). The courts have upheld warrantless arrests in many cases where the police were informed by some credible person that defendant was about to escape. *See Dejarnette*, 732 S.W.2d at 350. The courts have also upheld a warrantless arrest where the officer has observed conduct that indicates the offender is about to escape. *Id.*

Johnson testified at the suppression hearing that he decided appellant was about to escape based on two pieces of evidence: (1) Johnson did not believe the address on appellant's driver's license; and (2) after Johnson told appellant he was a suspect, Johnson thought appellant would escape.

First, the address. Officer Johnson said that he did not believe the address on appellant's driver's license.[3] That address was appellant's parent's address, where appellant had lived since he returned from the military.

Johnson admitted he did not check the address on the driver's license. Johnson did not ask appellant for his telephone number to verify appellant's address. Johnson did not ask appellant for names of relatives. Johnson said he did not know about appellant's ties to the community.

Officer Johnson said he did not believe that the address on the driver's license was the correct one, because appellant told him he had stayed with friends. At the suppression hearing, appellant denied he told Johnson he stayed with friends. Even if true, however, that did not provide Johnson with probable cause to believe that appellant would escape. Staying with friends, instead at one's own home, is not evidence a person is about to escape.

### b. Discovery of police pursuit.

At the suppression hearing, Johnson testified he thought appellant would flee because Johnson told him he was a suspect. An officer cannot create probable cause for a warrantless arrest by telling the suspect of the officer's suspicions. If we permitted an officer to create probable cause in such a way, we would legitimize a shortcut around the fourth amendment. The Court of Criminal Appeals has held that the crime itself is not enough to prove that defendant would flee. *See Dejarnette*, 732 S.W.2d at 349–50.

### c. Proximity in time to the crime.

The majority holds that Officer Johnson was justified in arresting appellant because appellant was discovered within one day after the unidentified witness gave Johnson the license plate number. That is not what the law requires. It is not the proximity between the information and the arrest, but the proximity between the crime

3. The majority says that appellant was not able to give a fixed address. The record shows that appellant gave Johnson his driver's license but Johnson decided the address was not correct.

and the arrest that is relevant. Nine days expired between the crime and the two arrests.

### d. Location of the arrest.

This element requires us to address whether the arrest was in a public or private place. Here, the arrest was made on a public street. There was no evidence that appellant might have taken advantage of the public streets to escape. When the first officer approached appellant, who was sitting on the back of his disabled car, appellant evidently made no move to run. This factor does not help sustain the warrantless arrest.

### 3. Was there no opportunity to procure a warrant?

The majority does not discuss this element, which I think disposes of the issue. At the motion to suppress, the State did not offer any proof that Johnson did not have time to procure a warrant.

Before making an arrest, if at all possible, a police officer should obtain an arrest warrant. *Hogan v. State*, 631 S.W.2d 159, 161 (Tex.Crim.App.1982). Under article 14.04, which permits the police to make a warrantless arrest, the State must establish both probable cause for the arrest *and* the circumstances that made it impossible to secure a warrant. *Kelley v. State*, 676 S.W.2d 646, 650 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd).

Officer Horn arrested appellant on the morning of December 4, 1987. There is nothing in the record to determine what time Officer Horn made the arrest. We only know it was the morning. Neither do we know when Johnson first received notice that appellant was being held on Westheimer. We know Johnson arrived at the scene and made the second arrest at about 11:30 a.m. Depending on when Johnson first learned that HPD was holding appellant, Johnson could have had numbers of hours to get a warrant.

We can take judicial notice that December 4, 1987 was a weekday, and that in Harris County there are over 157 judges, who, as magistrates, may issue warrants.

Johnson did not offer any reason he could not reach a judge to issue an arrest warrant. Under the authority of *Hogan*, when the record shows a police officer made no attempt to find out if a justice of the peace was available, or to secure an arrest warrant, we should reverse. 631 S.W.2d at 161.

### II. The voluntariness of the confession.

If the trial court finds that the confession resulted from a violation of any provisions of the state or federal constitutions or laws, the court must exclude it. *Bell v. State*, 724 S.W.2d 780, 787 (Tex.Crim.App. 1986); TEX.CODE CRIM.P.ANN. art. 38.23 (Vernon Supp.1990). The exclusion is not automatic, however. *Bell*, 724 S.W.2d at 787. If the court finds the arrest illegal, it may still admit the confession if the State shows that the illegality of the arrest did not contaminate the confession. *See Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963). The confession must be "sufficiently an act of free will to purge the primary taint." *Brown v. Illinois*, 422 U.S. 590, 602, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975). The burden is on the State. *See Bell*, 724 S.W.2d at 787.

To decide whether a confession, which was given after an illegal arrest, was voluntary, we apply the test from *Brown v. Illinois:* (1) were *Miranda* warnings given, (2) the passage of time between the arrest and the confession, (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the officer's misconduct. 422 U.S. at 603–604, 95 S.Ct. at 2261–62; *Beasley*, 728 S.W.2d at 355–56.

### 1. *Miranda* warnings.

Officer Johnson gave appellant the *Miranda* warnings before appellant confessed. Appellant also signed a written statement that informed him of his constitutional rights, which he knowingly waived. Even when *Miranda* warnings are given, the court must suppress a defendant's confession if it is a result of an illegal arrest. *See Bell*, 724 S.W.2d at 788 (fifth amendment warnings under *Miranda* do not cure

fourth amendment problems of an arrest). *See also* LaFave, W.R., 4 *Search and Seizure* § 11.4(b) (2d ed. 1987).

As we said in *Lewis*, the use of a statement resulting from an illegal arrest violates the fourth amendment guarantee against unreasonable search and seizure. 737 S.W.2d at 861. Thus, even when a confession is free of fifth amendment problems (because *Miranda* warnings were given), the confession is not free of the taint of an unlawful arrest if the confession results from of a violation of the fourth amendment. *Id.; Brown v. Illinois*, 422 U.S. at 602, 95 S.Ct. at 2261. To break the causal chain between the illegal arrest and the confession made as a result of the arrest, the State cannot simply prove that the *Miranda* warnings were given. Proof that appellant's statement meets the fifth amendment standard of voluntariness does not cure the taint of the illegal arrest. When the State obtains a confession after an illegal arrest, the State must also show that the confession was sufficiently an act of free will so that it purged the primary taint of the illegal arrest. *Wong Sun*, 371 U.S. at 488, 83 S.Ct. at 417–18; *Brown v. Illinois*, 422 U.S. at 602, 95 S.Ct. at 2261.

### 2. The time between the arrests and the confession.

The majority says there was a lapse of only two hours between the second arrest and the confession. I believe the majority misreads the record. The second officer made his arrest about 11:30 a.m. Appellant signed a confession at 4:10 p.m. There was, therefore, about four hours between the second arrest and the confession.[4]

In *Beasley*, 728 S.W.2d at 357 the Court of Criminal Appeals held the lapse of seven hours between the arrest and the confession was too little time to remove the taint, and looked to the other factors. If the lapse of seven hours was too little time to dissipate the effect of an illegal arrest, obviously two (or four) hours was also too little time. *See Bell*, 724 S.W.2d at 787

(court-suppressed confession made one and a half to three hours after illegal arrest, even though *Miranda* warnings were given).

As part of this analysis we must also remember that appellant was a diagnosed paranoid schizophrenic who was without his medication. It is easier to overbear a person with a mental illness than a normal person.

### 3. Intervening circumstances and the illegal arrests.

There were no intervening circumstances that reduced the impact of the illegal arrests. Appellant was not taken before a magistrate, was not given the opportunity to contact his family, and was not given the chance to consult with an attorney.

The analysis of intervening circumstances must be considered along with the analysis of the passage of time. The courts generally look to the length of time between the illegal arrest and the confession to see if the length of time between the two dispelled the effect of the illegal arrest. In those cases, the courts consider that the effect of the illegal arrest will pass with time. For example, when a confession is separated by days from the illegal arrest, we can be fairly sure the illegal arrest did not play a part in inducing the confession. Our assumption is that, days later, when defendant talks to his attorney and others, he is not being overborne by the illegal arrest into making a confession. The unstated assumption in our analysis of the passage of time, is that there will be some intervening circumstances.

When there are no intervening circumstances and the illegal arrest and detention continue without interruption, the passage of time exacerbates the effect of the illegal arrest; it does not extinguish it. For example, if a defendant is arrested and held incommunicado for two days, most courts will assume the passage of time between

---

**4.** There was actually more than four hours between the arrest and confession if we count from the first illegal arrest. The careful reader may ask why the dissent, who argues there was

not enough time to dissipate the taint of the illegal arrest, makes a point that even more time expired than the majority contends. I will get to that under the next section.

the illegal arrest and the confession, along with the lack of intervening circumstances, exacerbated, not dissipated, the effect of the illegal arrest.

Here, appellant was first arrested sometime on the morning of December 4, 1987. We have absolutely no information about the time of the first arrest except that it was before 11:00 a.m. From the time of his first arrest, appellant was in the custody of the police. Once the second officer placed him under arrest and transported him to police headquarters, appellant was the focus of that officer's attention until he confessed.

The majority says there was an intervening circumstance, that Officer Johnson told appellant he had been identified. Slip op. at 11. I do not think this is the kind of intervening circumstance that inures to the benefit of the State. I believe *Brown v. Illinois* tells us to look for intervening circumstances that would lessen the impact of the illegal arrest. A trick could hardly lessen the impact; it would probably exacerbate it.

4. The purpose and flagrancy of the officer's misconduct.

To trick appellant into confessing, Officer Johnson told appellant that the victim had identified him as her assailant. Trickery or deception, however, do not render a confession involuntary, unless the method used was calculated to produce an untruthful confession, or was offensive to due process. *Snow v. State*, 721 S.W.2d 943, 946 (Tex.App.—Houston [1st Dist.] 1986, no pet.); *Dotsey v. State*, 630 S.W.2d 343, 349 (Tex.App.—Austin 1982, no pet.).

Other than the false information, there were no allegations of police misconduct. In fact, Johnson testified that he provided appellant with lunch, albeit a T.V. dinner, and was not denied other requests, or promised favors in exchange for his statement.

I would sustain appellant's second point of error and hold that the State did not carry its burden to prove that the confession was not tainted by the illegality of the two arrests.

The judgment of the trial court should be reversed.