**Oris James WILSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 67809.**

Court of Criminal Appeals of Texas, Panel No. 1.

Sept. 30, 1981.

---

Jimmy D. Ashley, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., James C. Brough, and Michael T. McSpadden, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, DALLY and TEAGUE, JJ.

OPINION

TEAGUE, Judge.

Appellant appeals from the trial court's order revoking his felony probation.

On January 14, 1980, the appellant entered a plea of guilty to an indictment that charged him with committing on May 9, 1979, the offense of "intentionally and knowingly manufactur[ing] a controlled substance, namely, PHENCYCLIDINE." After obtaining a pre-sentence investigation report, the trial court assessed appellant's punishment at ten years confinement in the penitentiary and a $2,500 fine, the confinement portion being ordered probated.

On September 4, 1980, the State filed a motion to revoke appellant's probation, alleging in the motion that: "On or about August 28, 1980, in Harris County, Texas, [he] did then and there intentionally and knowingly possess a controlled substance, namely, phencyclidine."

Appellant filed a written motion to suppress the evidence, which motion was heard and denied on October 3, 1980. Shortly thereafter, a hearing, based upon agreements and stipulations of the parties, was held on the State's motion to revoke appellant's probation. Appellant offered no testimony at the hearing. After both sides rested and arguments were heard, the trial court found that appellant violated his probation for the reason stated in the State's motion to revoke, see supra.

Appellant raises only one contention in his appeal, that is: "The trial court abused its discretion by revoking Appellant's probation based on evidence seized as the result of an illegal arrest and search on the ground that the officers did not have sufficient probable cause to arrest Appellant without a warrant."

It is, therefore, necessary for us to review the evidence presented below.

At the hearing conducted on appellant's motion to suppress evidence, only one witness, Ron Gospederic, a special agent employed by the Federal Drug Enforcement Administration, testified.

Gospederic testified that at some time before 4:30 p. m. on the day in question, he had occasion to talk with an "informant," who told Gospederic that: "Mr. Wilson [appellant] would be going to a phencyclidine laboratory, that he would be manufacturing a quantity of PCP, and that he would be leaving that laboratory with the PCP." "The informant identified a white pickup truck as the vehicle most commonly used by Mr. Wilson..." The informant did not state what type clothing the appellant would be wearing nor did the informant tell Gospederic what time appellant would be "going to the laboratory." The informant also did not tell Gospederic where "the laboratory" was located. The informant had never told Gospederic he had been "to the laboratory." The informant also did not tell Gospederic the source or the basis of his information, and Gospederic did not ask him. Without detailing what information he had received from the informant in the past, Gospederic testified that whatever information he had received in the past that came from the informant, "it [was] reliable." However, Gospederic also testified: "I have never used him [the informant], correct, as far as making a case with him." The record also reflects the following:

Q. You never used him to make a case with him before?

A. Correct.

Q. So, you had no way of knowing whether his information was reliable or not.

A. I thought it was reliable.

Q. Well, you never used him before, had you?

A. He has given me reliable information, yes. He has given me the names of people that we have been interested in, and it was reliable.

Q. You just testified you never made a case with him before.

A. Correct.

Q. So, wouldn't it be fair to say, Mr. Gospederic, this was the first time that you had received information from that informant that you could use or that you could attempt to use to make an arrest.

A. This was the first time we did use the information, yes.

Q. So you really never tested this information before, had you?

A. I don't understand the word, test. As far as I am concerned, his information always passed the test.

Q. To determine his reliability, you never tested it. Had you checked it out?

A. Well, I have checked information out before, and it's been reliable.

Q. How many other instances have you checked it out before?

A. Like I said, a couple of times.

Q. Have you ever made any arrests on this information?

A. No.

Q. Prior to this time?

A. No.

Q. To determine its reliability?

A. No arrests.

Q. And you don't know how he got his information?

A. No, I do not.

The informant had never told Gospederic that he had seen the appellant in possession of "PCP," nor that the appellant was armed with any weapons. The informant also did not tell Gospederic anything in reference to the community of Barrett Station, although Gospederic testified that at some unknown time and for an unknown reason he had in the past arrested appellant at Barrett Station.

With the above related information from his informant, Gospederic, with other law enforcement officials, around 4:00 O'Clock p. m. on the day in question, set up a surveillance near appellant's apartment. He first saw appellant at approximately 8:30 p. m., when appellant left his apartment, got on his 750 Honda motorcycle, "a pretty hot vehicle," and proceeded down Highway 90. Gospederic and the others maintained surveillance of appellant until they arrived in the community of Barrett Station, at which time, as Gospederic tells us, "we lost him from view." Gospederic and the others then "drove all the streets of Barrett Station, but were unable to locate his [appellant's] motorcycle." The informant also told Gospederic that appellant was going to work at his place of employment the next day. It was therefore assumed by Gospederic and the other officers that appellant had to return to his apartment, by going the same direction as the way he went to Barrett Station. Surveillance was then set up "on the roads coming to and from Barrett Station." Around 4:30 A.M., Gospederic and the other law enforcement officials saw appellant riding his 750 Honda motorcycle, "coming out of Barrett Station," going "the opposite direction from

where we lost him going in." Appellant then proceeded down Highway 90. He subsequently was caused to stop at an intersection due to a traffic light. Gospederic testified that at this time, when "we rolled up behind him he was reaching inside the fairing of the motorcycle on the left side, doing something." Gospederic's vehicle at that time was immediately behind appellant's motorcycle. Gospederic testified that "he turned around and looked at us, and then he kind of messed around there again, and then he pulled off when the light turned green." No efforts were made by any of the law enforcement officials to arrest appellant at this time.

Shortly after proceeding from the intersection, appellant drove onto the premises of a nearby gasoline service station and stopped his vehicle. Gospederic testified that: "And we had to pass him because we were the only vehicle on him at the time, and we were afraid he was going to bolt and run on the motorcycle, and we wouldn't be able to catch him." After making a U-turn, Gospederic then drove back to the service station and arrested the appellant. Gospederic immediately looked in the left hand side of the fairing, where he found a brown bottle he suspected contained phencyclidine or "PCP." The bottle was subsequently examined by a member of the Houston Police Department's crime laboratory and the analysis showed it to contain the controlled substance phencyclidine.

We find the issue, as drafted by appellant, see supra, to be properly before this Court. After the trial court denied appellant's motion to suppress the evidence, the State's case was then presented by "agreements and stipulations" of the parties. Throughout the introduction of the "agreements and stipulations" into evidence, the record affirmatively shows that appellant's objection to the admissibility of the evidence, made in his motion to suppress and at the hearing, was carried over to the hearing on the Motion to Revoke. The trial court at different times during the hearing stated into the record: "The Court notes the Defendant objects and continues

to object in the same manner he urged on his Motion to Suppress... And the Court notes the ongoing objection to the matter dealt with on the Motion to Suppress." If it be the State's contention that appellant did not preserve his error, it misreads this record. Also, if it be the State's contention that based on Gospederic's testimony that "he found a brown bottle in Appellant's possession [sic], the contents smelled to Agent Gospederic like phencyclidine, and that Agent Gospederic had a Bachelor's degree in Chemistry," that this is sufficient to overcome an illegal and unlawful arrest and search, as well as being sufficient to satisfy the predicate for the giving of an expert opinion, we find that based upon this record, the State shows a total lack of understanding and appreciation of *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and this Court's decision of *Duran v. State,* 552 S.W.2d 840, 843 (Tex.Cr.App.1977). Although the record does show that Gospederic testified that: "I have a bachelor's degree in chemistry," without more being shown we find this could easily mean that he received such degree by virtue of a correspondence school course, or less. There is not anything in this record to show that Gospederic has had any training concerning the controlled substance phencyclidine, has had any experience in making an analysis of same, nor does the record show nor tend to show that he possessed *any* qualifications concerning the controlled substance phencyclidine. Nor did he testify at the hearing in the capacity as an expert witness. He testified: "I found a brown bottle, and it smelled to me like phencyclidine." The expert testimony came through the "agreements and stipulations," with the record also showing the following:

> MR. ASHLEY (Appellant's Attorney): Your Honor, we would so stipulate; however, *we would object to the Court hearing testimony based on our Motion to Suppress that you have already ruled on.*

> .    .    .    .    .

> THE COURT: The Court will accept the proposed stipulation *and the Court notes the ongoing objection to the matter dealt with on the Motion to Suppress.* (Emphasis Added).

We, therefore, for the reasons stated, accordingly reject the State's contention that: "It is submitted that proof that, to a man with a Bachelor's degree in Chemistry, the contents of a bottle found in Appellant's possession smelled like phencyclidine is sufficient, standing alone, to support the revocation of probation in this case."

We must, perforce, address the issue of the validity of appellant's arrest and the admissibility of the "fruit" of that arrest in evidence at the hearing.

The purpose of the Fourth Amendment, as well as of the corresponding State constitutional provision, see Art. I, Sec. 9, Texas Constitution, is protection of innocent and guilty alike from arrest or search based upon suspicion or upon common rumor and report rather than upon proof of reasonable grounds for believing a crime has been or is being committed, either through direct evidence or through reasonable inferences from suspicious acts.

> Arrest on mere suspicion collides violently with the basic human right of liberty. It can be tolerated only in a society which is willing to concede to its government powers which history and experience teach are the inevitable accoutrements of tyranny. Hogan and Snee, The McNabb-Malloy Rule: Its Ruse, Rationale and Rescue, 47 Geo. L.J. 22.

▮▮▮ It is now axiomatic in our law that 1) the standards applicable to the factual basis supporting an officer's probable cause assessment at the time of a challenged warrantless arrest and search are at least as stringent as the standards applied with respect to a magistrate's assessment as a prelude to issuing an arrest or search warrant, *Whiteley v. Warden,* 401 U.S. 560, 566, 91 S.Ct. 1031, 1035, 28 L.Ed.2d 306 (1971), and 2) all arrests and searches without valid warrants are unreasonable unless shown to be within one of the exceptions to the rule that an arrest or a search must rest

upon a valid warrant. A valid exception must exist and the burden is on the State to show that a warrantless arrest or search comes within some exception to the above general rule of exclusion. *Honeycutt v. State*, 499 S.W.2d 662, 664 (Tex.Cr.App. 1973).

Because the probable cause assessment in this cause must be based on information received from an informant, we therefore assess that probable cause by the same standards for determining probable cause where a magistrate issues an arrest or search warrant. *Colston v. State*, 511 S.W.2d 10, 12 (Tex.Cr.App.1974). "In the jargon of criminal law practitioners, we deal with the *Spinelli-Draper* aspects of the first ("basis of knowledge") prong of the *Aguilar* test." *People v. Elwell*, 50 N.Y.2d 231, 428 N.Y.S.2d 655, 406 N.E.2d 471 (1980).

■ It is well established that probable cause for a warrantless arrest cannot be bolstered by the results or fruits seized as a result of a subsequent search. See *Colston v. State*, 511 S.W.2d 10, 13 (Tex.Cr.App. 1974).

■ In appraising the "basis of knowledge" that was furnished Gospederic, we grant to Agent Gospederic all the benefits of what his informant told him concerning appellant, but we can find only the following information from the informant that can be shown to warrant the stop, arrest and detention of appellant:

1. The informant called Gospederic and told him over the telephone that appellant would be going to a phencyclidine laboratory.

2. That appellant would be manufacturing a quantity of phencyclidine at the laboratory.

3. That appellant would leave the laboratory with the phencyclidine.

4. That appellant would "probably" be driving a white pick-up truck.

But, we must not stop here for *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), teaches that probable cause can arise from a combination of direct observation by the officer and hearsay information from an informant.

1. Based on the above information from the informant, a surveillance was first set up at appellant's apartment.

2. Nothing in the way of unusual activity is shown during this period of time; approximately 4½ hours.

3. Appellant leaves his premises on a motorcycle and goes to Barrett Station.

4. At no time is it shown he violated any traffic laws when driving enroute to Barrett Station on his motorcycle.

5. Due to the surveillance team losing sight of appellant, another "stakeout" occurs, "on the roads coming to and from Barrett Station."

6. Approximately 8 hours later, appellant reappears, driving his motorcycle, but doing so at all times in a lawful manner.

7. The surveillance team then commences to follow appellant, who lawfully stops at an intersection because of a traffic light.

8. Although at that time, appellant was shown to be reaching inside the fairing of the motorcycle, this, without more, is as consistent with innocent behavior as with criminal conduct.

9. After appellant pulled into the service station and stopped, the surveillance team shortly came to his location, arrested him, and searched his person and his motorcycle; in the fairing of the motorcycle, they found a bottle of what was later shown to contain phencyclidine.

10. The evidence also shows that appellant and Gospederic knew one another and that Gospederic had arrested appellant for something at some unknown time in the past in Barrett Station.

We find the above sorely lacking to establish probable cause to authorize the arrest of appellant and a search of his motorcycle. "The purpose for requiring that the hearsay informant be of known reliability and that the source of the officer's knowledge be revealed is to ensure that action infringing upon a person's liberty not be taken without 'reasonably trustworthy information [of facts and circumstances] sufficient in themselves to warrant a man of reasonable caution in the belief' that an offense has been committed." *People v. Elwell*, supra, 428 N.Y.S.2d at page 658, 406 N.E.2d at page 474.

There is absolutely nothing concretely stated by Gospederic as to what the informant told him that would warrant a man of reasonable caution in believing that a felony has been committed or that appellant was about to escape. *Hardison v. State*, 597 S.W.2d 355 (Tex.Cr.App.1980); Art. 14.04, V.A.C.C.P. However, do the facts that were presented, concerning the corroboration of the informant's tip, aid the State? It is also axiomatic in our law that hearsay information, insufficient to constitute probable cause under *Aguilar*, supra, may nevertheless become sufficient if adequately corroborated by independent observation of the arresting officer. See *Rushing v. State*, 500 S.W.2d 667, 670 (Tex.Cr.App.1973). Sadly to say for the State, we find no corroboration of any kind; in fact, we do not find anything new in the form of corroboration that the officers had not already observed; i. e., appellant drove his motorcycle in a lawful manner to Barrett Station and back towards his apartment. It is questionable whether the officers in this cause even had an articulable hunch, suspicion, or good faith basis on which to arrest the appellant. *Brown v. State*, 481 S.W.2d 106, 110 (Tex.Cr.App.1972). Compare *Green v. State*, 594 S.W.2d 72 (Tex.Cr.App. 1980). In sum, there were no corroborative facts presented to corroborate the "tip" of the informant. Cf. *Hamilton v. State*, 590 S.W.2d 503 (Tex.Cr.App.1979). The law enforcement authorities were simply not given any specific and articulable facts sufficient to justify a stop and arrest of appellant, nor did the sparse information that was furnished by the informant elevate the facts to such a degree that a man of reasonable caution would believe a crime had been committed by appellant. *Ebarb v. State*, 598 S.W.2d 842 (Tex.Cr.App.1980).

In the instant case, nothing that the police ever observed appellant doing suggests criminal activity in any way. The law enforcement officials were, therefore, without authority to stop or to arrest the appellant. Any search resulting from the stop or the arrest was unlawful.

 There being no probable cause for the stop or arrest of appellant, or for the search of his motorcycle, reversible error was committed by the trial court overruling the appellant's motion to suppress evidence and by the admission and consideration of such evidence at the hearing on the State's motion to revoke. Therefore, there was an abuse of discretion in the trial court ordering appellant's probation revoked.

The judgment is reversed and the cause remanded.