Johnson-H v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-90-192-CR

        HARRY JOHNSON,
                                                                              Appellant
        v.

        THE STATE OF TEXAS,
                                                                              Appellee
 

 From the 77th District Court
Limestone County, Texas
Trial Court # 7471-A
                                                                                                                
                                                                     
O P I N I O N
                                                                                                     

          Appellant was convicted by a jury of attempted capital murder; the judge sentenced him
to life in prison. See Tex. Penal Code Ann. §§ 15.01, 19.03(a)(1) (Vernon Supp. 1991 and
Vernon 1989). By three points, he asserts that the court erred in failing to charge the jury on (1)
the lesser-included offense of aggravated assault, (2) the lesser-included offense of reckless
conduct, and (3) the law of self-defense. We will reverse the judgment and remand for a new
trial.
THE FACTS
          The injured officer called the event an "unfortunate incident." Appellant, suffering from
chronic undifferentiated schizophrenia, was a pauper and transient. As he passed through Mexia,
he stopped outside the city hall and asked the chief of police if there was a Salvation Army office
in town. When told there was none, he asked about other cities and walked away. The chief then
heard him cursing and shouting—conduct described by one witness as ravings—and saw him
pointing his finger back at the chief. The chief sent officer John Carter to "find out who he was,"
further instructing Carter to "check him out and if [he] was the one doing all the cussing, get him
out of the downtown area or do what [you need to do] to take care of business there." Carter
stopped Appellant along the railroad tracks and told Appellant he wanted to talk to him. Appellant
walked on. Carter said that Appellant cussed him, saying, "I don't want to talk to you. What do
you want to talk to me for?" After Appellant said that twice, Carter decided to arrest him for
"disorderly conduct."
          The witnesses agreed that Carter approached Appellant and grabbed his arm. Appellant's
coat sleeve came off; Carter lost his footing and fell into a muddy ditch. The last thing Carter
could remember was falling backwards. The testimony of the witnesses was contradictory about
whether Appellant fell into the ditch with Carter, when Appellant got Carter's gun, and where
Appellant was when he shot Carter. Carter testified that the "snapper," the strap holding the gun
in the holster, was broken. Carter was hit twice with hollow-point bullets from his .357 magnum. 
          Appellant's written statement, which was admitted into evidence, said in part:
I go out toward the railroad track to go back down the track. That is the way I
came in last night. So as I am going down this area, I am about to reach this overpass or
tressel. All of a sudden I feel something grabs on my right arm and something pushes me
over the back of my head. At the same time, he is hooking under my leg to try to pull me
over some kind of way. I am trying to find out what is going on. I asked him what he
was doing and why was he hitting on me. He did not make any reply, but continued to put
his fists on the side of my face and started grabbing on my arm. Somehow, he was moving
around me, twisting my coat and grabbing up around my neck. It was coming into a
wrestling. I guess he was trying to wrestle me to the ground. I was trying to push away
from him. He wrestled me to the ground. I saw his gun on my left hand side and I reach
for the gun and picked it up and shot the gun twice. When I shoot the gun, all of a sudden
he straightened himself up. The guy who was shot was laughing. I do not know what he
did from there. I got off from the ground. I saw some people on the side. I throwed the
gun to the ground and just remained there. After a second or so, the police had come up.

          The court charged the jury on the lesser-included offenses of murder and voluntary
manslaughter and on the defense of insanity. Appellant's points attack the court's denying his
request for charges on the lesser-included offenses of aggravated assault and reckless conduct, as
well as a charge on self-defense.
 
LESSER-INCLUDED OFFENSES
          Appellant argues that his intent is the difference between a conviction for attempted capital
murder or aggravated assault or reckless conduct. We agree in part and disagree in part.
          In determining whether a jury must be instructed concerning a lesser-included offense, a
two-step analysis must be applied. Royster v. State, 622 S.W.2d 442, 446 (Tex. Crim. App.
[Panel Op.] 1981) (on rehearing). First, the lesser-included offense must be included within the
proof necessary to establish the offense charged. Id. Second, there must be some evidence in the
record showing that, if the defendant is guilty, he is only guilty of the lesser offense. Id.; see also
Moreno v. State, 702 S.W.2d 636, 640 (Tex. Crim. App. 1986).
          Aggravated assault and reckless conduct are lesser-included offenses of attempted capital
murder. Godsey v. State, 719 S.W.2d 578, 584 (Tex. Crim. App. 1986). Both, then, meet the
first prong of the test. Id. We must determine if there is some evidence in the record showing
that, if Appellant is guilty, he is only guilty of either of the lesser offenses. 
          aggravated assault
          The elements of second-degree felony aggravated assault, as applied to these facts, are (1)
a person, who (2) intentionally, knowingly, or recklessly (3) causes serious bodily injury to
another (4) using a deadly weapon. See id.; Tex. Penal Code Ann. § 22.02 (Vernon Supp.
1991). The elements of reckless conduct are (1) a person, who (2) recklessly engages in conduct
(3) that places another in imminent danger of serious bodily injury. Tex. Penal Code Ann. §
22.05 (Vernon 1989).
          The State relies on Godsey for the proposition that the defendant's deliberate pointing of
a gun at peace officers was evidence of his intent to kill. See Godsey, 719 S.W.2d at 584. 
Although it is true that the court said that Godsey's actions manifested only an intent to kill and
did not evidence a mere threat, the court stressed that the effect of Godsey's position at trial was
"I was not there so I could not intend to kill anyone." Id. at 584-85. If his position were accepted
as true, Godsey would have been guilty of no offense. Id. at 584. The opinion points out that the
statements by which Godsey attempted to negate intent to kill could not be considered in a
vacuum, but must be considered in the context of the facts. Id. Thus, Godsey's statements to the
effect that he could not have intended to kill because he was not there did not fit within the context
of the other facts of the offense and could not amount to some evidence of the lesser offense. Id.
          When we examine all of the evidence to determine in the context of the facts if the lesser-included offense was raised, the manner in which Carter approached Appellant, the scuffle which
ensued, and Appellant's statement about the events lead us to the conclusion that there is some
evidence that Appellant was guilty of only the offense of aggravated assault and that the jury
should have been so charged. See id. We sustain point one.
          reckless conduct
          Reckless conduct may be a lesser-included offense of aggravated assault. See, e.g.,
Mullins v. State, 767 S.W.2d 166, 169 (Tex. App.—Houston [1st Dist.] 1988, no pet.). Here,
the elements which would distinguish the offenses, i.e., actual serious bodily injury and use of a
deadly weapon, are undisputed. The element of recklessness is common to both offenses. Thus,
if Appellant is guilty of reckless conduct, he is also guilty of aggravated assault. See Tex. Penal
Code Ann. §§ 22.02, 22.05 (Vernon Supp. 1991 and Vernon 1989). In the context of the facts
presented, no charge on the lesser-included offense of reckless conduct was necessary. We
overrule point two.
SELF-DEFENSE
          Appellant complains that he was denied a charge on self-defense. Because we are reversing
the judgment for failure to include the lesser-included offense of aggravated assault in the charge,
we conclude that we should not decide this question. See Mullins, 767 S.W.2d at 169. The
evidence is not well developed about the statutory or other justification which Carter may have had
for arresting Appellant. Because the evidence on the issue of self-defense which will be presented
at the new trial may not be identical to that presented at this trial, we deem it inappropriate to
comment further on point three. See id.
          We reverse the judgment and remand the cause for a new trial.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings and
          Justice Vance
Reversed and remanded
Opinion delivered and filed January 8, 1992
Do not publish 



ocedure.” Ray also moved to suppress the drugs found in the car. Ray argued that this
evidence should be suppressed because the “actions of the Rural Area Narcotics Task Force
violated [his] constitutional and statutory rights . . . under the Fourth, Fifth, Sixth, and Fourteenth
Amendments to the United States Constitution, Article I, Section 9 of the Texas Constitution, and
under Article 38.23 of the Texas Code of Criminal Procedure.” Leslie’s motion is identical to
Ray’s and alleges the same grounds.
      After a joint hearing, the court granted the defendants’ motions. The court ordered that “any
physical evidence or oral statements obtained by the State of Texas on October 24, 2000, from the
vehicle in which Defendant was an occupant, or oral statements obtained from any Defendant is
hereby suppressed.” The State appeals the court’s ruling.
ARGUMENTS BY THE PARTIESIn suppression cases in which the State is the appellant, the basic principle of appellate
jurisprudence—that arguments not presented to the trial court are deemed waived—applies. State
v. Mercado, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998); Tex. R. App. P. 33.1. The sole
exception is that the issue of standing can be raised by the State for the first time on appeal,
regardless of whether the motion to suppress was granted or denied. State v. Klima, 934 S.W.2d
109, 111 (Tex. Crim. App. 1996).
The State’s arguments
      First, the State contends that none of the defendants’ established standing to complain about
the search of the vehicle, which is owned by Leslie’s mom. Second, the State argues that the
initial stop and interrogation of the defendants was a temporary detention, a “Terry stop,” for the
purpose of investigating possibly-criminal activity. Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868,
1880, 20 L.Ed.2d 889 (1968); Carmouche v. State, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). 
The State also contends that Leslie’s admission that drugs were in the car was made during that
investigation. The State concludes that Leslie’s admission gave the officers probable cause to
arrest her and the other two occupants for possession of methamphetamine. Thus, the State argues
that the warrantless search of the car which resulted in the discovery of the methamphetamine was
permissible as a search incident to the arrest of the occupants. Alternatively, the State argues there
was probable cause to conduct a warrantless search based on the “automobile exception” to the
Fourth Amendment. United States v. Johns, 469 U.S. 478, 484, 105 S.Ct. 881, 885, 83 L.Ed.2d
890 (1985); State v. Guzman, 959 S.W.2d 631, 634 (Tex. Crim. App. 1998).
The defendants’ arguments
      The defendants argue: (1) under Lewis v. State, 664 S.W.2d 345 (Tex. Crim. App. 1984),
they each have standing to complain about the search of the car if the search resulted from an
infringement of their own Fourth Amendment rights; (2) the Task Force officers were not justified
in stopping their car merely because it was seen entering and leaving the Wuemling property, i.e.,
that the facts do not support any “reasonable suspicion” that they were possibly engaged in
criminal activity so as to justify the stop of the car; (3) in the alternative, even if the officers had
reasonable suspicion to conduct a Terry stop, the evidence shows that no such investigative
detention occurred, but rather the evidence shows that the officers stopped them only to arrest
them; (4) their arrests were illegal because there was no probable cause or statutory basis for the
arrests and, therefore, any evidence or oral statements derived from the arrests must be
suppressed; and (5) the officers were not given consent for a warrantless search of the vehicle and
had no authority to search the vehicle after the defendants had already been illegally arrested and,
thus, the evidence found in the vehicle must be suppressed.
STANDARD OF REVIEW
      In a suppression case, we apply a bifurcated standard of review, giving “almost total
deference to a trial court’s determination of historical facts” and reviewing de novo the court’s
application of the law of search and seizure to those facts. Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). Accordingly, “determinations of reasonable suspicion and probable
cause [are] reviewed de novo on appeal.” Id. at 87 (citing Ornelas v. United States, 517 U.S.
690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996)). When the State is the appellant, it
bears the burden of proving the trial court abused its discretion in granting the motion to suppress. 
Mercado, 972 S.W.2d at 77.
STANDING
      We initially address the State’s first argument regarding the issue of standing: that none of the
defendants have established their own privacy interest in the car and, therefore, cannot complain
about its being searched. A defendant bringing a motion to suppress bears the burden of
establishing his privacy interest in the place or item searched so as to have standing to raise a
Fourth Amendment claim. Klima, 934 S.W.2d at 111 (citing Rakas v. Illinois, 439 U.S. 128,
149-50, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978)).
Crisp’s standing
      A passenger such as Crisp can challenge the search of the vehicle “in which he is riding if the
search resulted from an infringement (such as an illegal detention) of the passenger’s Fourth
Amendment rights.” Lewis v. State, 664 S.W.2d 345, 348 (Tex. Crim. App. 1984) (emphasis in
original); Carroll v. State, 56 S.W.3d 644, 650 (Tex. App.—Waco 2001, no pet. h.). Here, Crisp
challenges the legality of the initial stop, and he also contends that he was illegally arrested. 
Therefore, if his Fourth Amendment rights were violated because he was illegally detained or
illegally arrested, he would have standing to contest the search of the car.
Ray’s and Leslie’s standing
      A defendant has standing to challenge the search of a car he does not own if he shows he
gained possession of the borrowed car from the owner or one authorized to give permission to
drive it. Rovnak v. State, 990 S.W.2d 863, 867 (Tex. App.—Texarkana 1999, pet. ref’d). Leslie
testified that she had to “get [her] mom’s car” so she and Ray could take Crisp to the Wuemling
property. We find that this testimony supports a finding that she gained possession of the
borrowed car from the owner. Id. There is nothing in the record to suggest that she stole the car
from her mother. Furthermore, Leslie, having borrowed the car from her mother, had the
authority to give permission to Ray, her husband, to drive it. Id. Accordingly, we conclude that
both Ray and Leslie have standing to challenge the search of the car. See, e.g., Nite v. State, 882
S.W.2d 587, 590-91 (Tex. App.—Houston [1st Dist.] 1994, no pet.) (defendant had standing to
challenge search of car registered to his wife in part because of community property laws); Stine
v. State, 787 S.W.2d 82, 85 (Tex. App.—Waco 1990, pet. ref’d) (defendant who had authority
to test drive vehicles left for repairs at car repair shop had standing to challenge search of car
which he had used to commit murder). We also note that they, like Crisp, might assert standing
under Lewis by contending that they were illegally arrested. Therefore, if their Fourth
Amendment rights were violated because they were illegally detained or illegally arrested, each
would have standing to contest the search of the car. Lewis, 664 S.W.2d at 348; Carroll, 56
S.W.3d at 650.
THE STOP
      The State argues that the officers had reasonable suspicion to stop the defendants and conduct
a brief investigative detention. Carmouche, 10 S.W.3d at 328 (citing Terry, 392 U.S. at 21, 88
S.Ct. at 1880). The three defendants contend that whether or not the officers were justified in
conducting a Terry stop is irrelevant because that is not what the officers did; rather, they argue
that the officers immediately arrested them without having probable cause to do so. We agree that
the facts of this case demonstrate that the question of whether the officers had reasonable suspicion
to conduct a Terry stop is not a relevant inquiry. However, in our analysis we will assume without
deciding that the officers had reasonable suspicion to make a Terry stop as we determine: (1)
whether the officers “immediately” arrested the defendants as the trial court so found; and (2) if
so, whether the officers had the legal authority to do so.
When were the defendants arrested?
      There is no question that all three defendants were ultimately arrested and taken to jail. The
question is: when did the arrests occur? When reasonable suspicion exists, the investigative
detention contemplated by Terry “is one during which the police are allowed to briefly question
a suspicious person respecting his identity, his reason for being in the area or location, and to
make similar reasonable inquiries of a truly investigatory nature.” Amores v. State, 816 S.W.2d
407, 412 (Tex. Crim. App. 1991). Here, the trial court found the following facts:
. . .
 
7. After receiving the radio transmission, Officer Clint Hammonds who was operating
a marked law enforcement vehicle stopped a white, older model vehicle on U.S. 281,
approximately 1-2 miles north of the [Wuemling property]. The vehicle had not been
involved in any traffic violation. Hammonds was joined almost immediately by Officer
David Inocencio and they removed the occupants from the vehicle. The two male
occupants, Ray Uloth and Michael Crisp, were immediately placed on the ground and
handcuffed. The female occupant, Leslie Uloth was allowed to hold a minor child
occupant who was hysterical.
 
8. They soon were joined by Officer Jessie Moreno and Hamilton County Deputy Jim
Buster at the location of the stop. All occupants were “Mirandized” and advised they
were being placed in 72 hour investigatory detention until the warrant could be served
on the property under surveillance. The occupants were not free to leave and were soon
transported to the Hamilton County jail.
 
9. Prior to their being transported to jail, Officer Moreno talked to Leslie Uloth after she
was given the Miranda warnings. She said they had been to the [Wuemling property] to
get a bed. Officer Moreno told her they had the [Wuemling property] under investigation
as a “drug lab,” that he did not believe her and [asked] did they get narcotics while at the
[Wuemling property]. Mrs. Uloth then admitted they had and that it could be found in
a green container behind the back seat.

(Emphasis added). The three defendants argue that the evidence supports the trial court’s finding
that the officers did not briefly detain them and conduct a limited investigation as defined in
Amores, but instead the officers immediately arrested them without probable cause. The State
contends that the circumstances called for safety precautions and what the officers did was an
investigative detention, and therefore, did not amount to an arrest without probable cause.
      The record supports a finding that when the officers stopped the vehicle they did not briefly
question the three defendants respecting their identities, their reason for visiting the Wuemling
property, or make similar reasonable inquiries of an investigative nature. Amores, 816 S.W.2d
at 412. Instead, the officers immediately removed Crisp and Ray, placing both of them on the
ground handcuffed. All three defendants were then “Mirandized” and told that they were not free
to leave because they were being placed in “72 hour investigatory detention until the warrant could
be served on the [Wuemling] property under surveillance.”
      In Burkes v. State, the Court of Criminal Appeals held that where no investigative questioning
preceded the officer’s conduct in requiring the defendant to lie down and handcuffing him, the
detention rose to the level of an arrest. Burkes v. State, 830 S.W.2d 922, 925 (Tex. Crim. App.
1991); see Justice Meyer’s concurring opinion in Rhodes v. State, 945 S.W.2d 115, 119-20 (Tex.
Crim. App. 1997) (arguing that the presence or absence of an investigation contemporaneous to
physical restraint should be a dispositive factor in the analysis). Moreover, the Court recently
held that an “arrest” occurs “when a person’s liberty of movement is successfully restricted or
restrained, whether this is achieved by an officer’s physical force or the suspect’s submission to
the officer’s authority.” Medford v. State, 13 S.W.3d 769, 773 (Tex. Crim. App. 2000); Vicioso
v. State, 54 S.W.3d 104, 109-10 (Tex. App.—Waco 2001, pet. ref’d). An arrest is complete if
“a reasonable person in the suspect’s position would have understood the situation to constitute
a restraint on freedom of movement of the degree which the law associates with formal arrest.” 
Medford, 13 S.W.3d at 773 (quoting United States v. Corral-Franco, 848 F.2d 536, 540 (5th Cir.
1988)). The subjective intent of either the police officer or the defendant is irrelevant. Id.
      Both Crisp and Ray were immediately handcuffed, “Mirandized,” placed on the ground, and
told that they were going to jail for 72 hours. Thus, their freedom was restricted by an officer’s
physical force and verbal directive. Id. at 773. Leslie’s liberty was restrained by her submission
to the officer’s authority in that she was not free to leave, was “Mirandized,” and was told that
she would also be going to jail for 72 hours. Id. From these facts we conclude that “no . . .
investigation was conducted and the detention can by no means be characterized as investigatory
within the meaning of Terry v. Ohio. . . .” Amores, 816 S.W.2d at 412; see Burkes, 830 S.W.2d
at 925 (since the officer conducted no investigation by questioning, the detention could not be
considered an investigatory stop).


 We agree with the trial court that all three defendants were
under arrest immediately after the vehicle was stopped, because any reasonable person in each of
the defendants’ positions “would have understood the situation to constitute a restraint on freedom
of movement of the degree which the law associates with formal arrest.” Medford, 13 S.W.3d
at 773 (citing Corral-Franco, 848 F.2d at 540).
Were the arrests legal?
      It is undisputed that the officers did not have warrants to arrest the defendants. Chapter
Fourteen of the Code of Criminal Procedure governs when an officer may make a warrantless
arrest. Tex. Code Crim. Proc. Ann. arts. 14.01-.06 (Vernon 1977 & Supp. 2002). Under these
facts, none of the articles in Chapter Fourteen apply, nor does the State so argue. Aside from
Chapter Fourteen, the Fourth Amendment requires probable cause before an arrest without a
warrant can be made. U.S. Const. amend. IV; State v. Ballard, 987 S.W.2d 889, 892 (Tex.
Crim. App. 1999). “Probable cause for an arrest exists where, at that moment, facts and
circumstances within the knowledge of the arresting officer, and of which he has reasonably
trustworthy information, would warrant a reasonably prudent person in believing that a particular
person has committed or is committing a crime.” Ballard, 987 S.W.2d at 892. There is no basis
in these facts on which the court could have found that probable cause existed prior to the arrests.
      Nevertheless, the State argues that Leslie’s statement that there were drugs in the vehicle was
made during the investigative detention which then gave the officers probable cause to arrest her
and the other two occupants for possession of methamphetamine. The trial court found, however,
that Leslie’s statement was made after she and the others had been arrested. Thus, Leslie’s
admission cannot be used retroactively as probable cause for her arrest and the arrests of the other
two defendants. The record demonstrates that nothing occurred between the time of the stop and
the arrests to support probable cause to arrest them. Finding no statutory or constitutional basis
for the arrests, we agree with the trial court that the defendants were illegally arrested. Our
conclusion also negates the State’s contention that the warrantless search of the car was
permissible as a search incident to the lawful arrest of the defendants.
Summary
      Although we assume that the officers had reasonable suspicion to stop the defendants’ vehicle
for an investigative detention, we find that the officers failed to conduct such an investigation, but
instead made an illegal arrest of each defendant. Amores, 816 S.W.2d at 411-12 (the initial stop
of the defendant in his car was an arrest, despite the State’s characterization of the stop as an
“investigative detention”). In light of this conclusion we now revisit the standing issue. The State
contested Crisp’s standing to challenge the search of the car. Having found that Crisp was
illegally arrested and thus his Fourth Amendment rights violated, we find that he has standing to
challenge the search of the car.


 Lewis, 664 S.W.2d at 348; Carroll, 56 S.W.3d at 650.
ARTICLE 38.23 AND ATTENUATION OF THE TAINTThe record shows a sequence of events that began when Leslie and the other defendants were
illegally arrested almost immediately after their car was stopped. Under article 38.23(a), because
all three defendants were arrested in violation of their Fourth Amendment rights, the physical
evidence found in the car is inadmissible in any criminal trial against them. Tex. Code Crim.
Proc. Ann. art. 38.23(a) (Vernon Supp. 2002).


 However, “the attenuation [of the taint] doctrine
is applicable to Art. 38.23's prohibition against evidence ‘obtained’ in violation of the law because
evidence sufficiently attenuated from the violation of the law is not considered to be ‘obtained’
therefrom.” Johnson v. State, 871 S.W.2d 744, 750 (Tex. Crim. App. 1994). Accordingly, “the
attenuation doctrine is not an exception to Art. 38.23, but rather is a method of determining
whether evidence was ‘obtained’ in violation of the law . . . .” Id. at 751. In the context of
article 38.23, the Court of Criminal Appeals recently stated that physical evidence “should be
excluded once a causal connection between the illegality and the evidence is established.” 
Roquemore v. State, 60 S.W.3d 862, 870 (Tex. Crim. App. 2001) (citing State v. Daugherty, 931
S.W.2d 268, 270 (Tex. Crim. App. 1996) (“Once the illegality and its causal connection have
been established, the evidence must be excluded.”)).
      There can be no question that each defendant had standing to challenge the seizure of his own
person. The standing to contest an alleged illegal seizure of one’s person is distinguishable from
standing to contest an alleged illegal search of a vehicle. The Lewis analysis demonstrates that the
illegal arrest of each defendant confers on that defendant the right to challenge the search of the
vehicle. Lewis, 664 S.W.2d at 348. The illegal arrests of all three occupants are logically
inseparable in time from each other—they were arrested collectively as a group. This event (their
arrests) was the first event of a sequence that led to the discovery of the drugs in the car. If they
had not been arrested, i.e., if the first event never happened, the officers would not have been
privy to Leslie’s admission and nor have searched the car. Accordingly, we find that there is a
“causal connection” between the illegal arrests and the recovery of the drugs. Roquemore, 60
S.W.3d at 870.
      Thus, the physical evidence must be suppressed under article 38.23(a) as to all three
defendants because we find that the search of the car, as well as the evidence obtained in that
search, is a “fruit” of the earlier seizures, i.e., the illegal arrest of each defendant. 40 GEORGE
E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE; CRIMINAL PRACTICE AND
PROCEDURE § 4.52, at 203 (2d ed. 2001); see Hernandez v. State, 13 S.W.3d 492, 506-07
(Tex. App.—Amarillo 2000), rev’d on other grounds, 60 S.W.3d 106 (Tex. Crim. App. 2001)
(court of appeals applied Lewis analysis finding passenger had standing to challenge search of car
and excluded cocaine found in car “on the basis of the exclusionary rule of Mapp [v. Ohio] and
its progeny, and on the basis of Art. 38.23(a) . . . .”).
The “automobile exception” to the Fourth Amendment
      The State also contends there was probable cause to conduct a warrantless search of the car
based on the “automobile exception” to the Fourth Amendment. Johns, 469 U.S. at 484, 105
S.Ct. at 885; Guzman, 959 S.W.2d at 634. Accordingly, the State argues that Leslie’s admission
gave the officers probable cause to search the car under this exception. However, under Bell v.
State (four-factor test), we believe that the taint of Leslie’s illegal arrest was not attenuated from
her confession. Bell v. State, 724 S.W.2d 780, 787-88 (Tex. Crim. App. 1986). Therefore, her
inculpatory statement was “obtained” as a result of her illegal arrest and must be suppressed. 
Tex. Code Crim. Proc. Ann. art. 38.23(a).
      But this analysis only strengthens our earlier conclusion that there was a “causal connection”
between the three defendants’ illegal arrests and the subsequent discovery of the drugs in the car. 
Roquemore, 60 S.W.3d at 870. Moreover, our analysis demonstrates that the search of the car
was achieved by exploitation of the primary illegality, i.e., the illegal arrest of each defendant,
because the officers could not have discovered the drugs “by [any] means sufficiently
distinguishable to be purged of the primary taint.” Lewis, 664 S.W.2d at 348 (quoting Wong Sun
v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963)) (emphasis
added). Thus, we reject the State’s argument that Leslie’s confession was a “means sufficiently
distinguishable” from the primary illegality that enabled the officers to lawfully search the car. 
Id.
Summary
      The purpose of the Fourth Amendment, as well as of the corresponding Texas constitutional
provision, is “protection of innocent and guilty alike from arrest or search based upon suspicion
or upon common rumor and report” rather than upon the much higher standard of probable cause. 
Wilson v. State, 621 S.W.2d 799, 803 (Tex. Crim. App. 1981). Accordingly, “[a]rrest on mere
suspicion collides violently with the basic human right of liberty.” Id. (quoting Hogan and
Snee, The McNabb-Malloy Rule: Its Ruse, Rationale and Rescue, 47 Geo. L.J. 22). With
these principles in mind, we find that the trial court correctly concluded that the three defendants
were illegally arrested as soon as they were ordered from the vehicle and that the search of the car
and the evidence discovered therein are “fruits” of that infringement on their respective “basic
human right of liberty.” Id.
CONCLUSION
      Having rejected all of the State’s arguments, we affirm the trial court’s order granting the
defendant’s motion to suppress in each case.
 

                                                                         BILL VANCE
                                                                         Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed March 20, 2002
Publish
[CR25]