Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


★ ★ ★ ★  ★ ★ ★

## MEMORANDUM OPINION

No. 04-10-00632-CR

Keith **DAVIS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR7030
Honorable Pat Priest, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Marialyn Barnard, Justice

Delivered and Filed:  September 14, 2011

AFFIRMED

After the trial court denied his motion to suppress, a jury found appellant Keith Davis guilty of possession of a controlled substance in an amount of one or more but less than four grams.  The trial court sentenced Davis to twenty years confinement in the Texas Department of Criminal Justice–Institutional Division.  On appeal, Davis contends the trial court erred in denying his motion to suppress.  We affirm the trial court's judgment.

## BACKGROUND

San Antonio Police Detective Brian Burke received information from a confidential informant about illegal drug activity.  According to Detective Burke, this informant had provided other information that same day that proved reliable and was corroborated.[1]  The informant identified Davis as a person in possession of narcotics, gave Detective Burke Davis's full name, a physical description, a vehicle description, and a location and time where Davis could be found with narcotics.  Tactical Response Unit Officer Cruz Esquivel, who was working with Detective Burke, provided the information to patrol officers working near the location given by the confidential informant.  Officers Juan Espinoza and Felipe Ramos were in the area and were the first to arrive at the location provided by the informant–a combination gas station and convenience store.  Officers Espinoza and Ramos soon spotted a vehicle and an individual matching the informant's description–the person was later identified as Davis.

According to the evidence at the suppression hearing, Davis spotted the officers and, appearing nervous, quickly entered the convenience store.  Officer Ramos immediately went after Davis and saw Davis put his hands up to his mouth, placing into his mouth a package containing a white substance.  Officer Ramos, believing the white substance to be cocaine, grabbed Davis and applied pressure to his jaw to prevent Davis from swallowing the substance.  Officer Ramos ordered Davis to open his mouth, but Davis resisted.  At that time, Officer Ramos saw a package containing a white substance in Davis's mouth.  With the assistance of other officers, Officer Ramos was eventually able to open Davis's mouth enough to scoop out one package with his pen.  After a few more moments of struggling with Davis, the officers recovered another package from Davis's mouth.  Later testing determined the packages

---

[1] Davis alleged the informant was under arrest when he provided the information, but Detective Burke testified the informant was not under arrest, and there is no record support for Davis's contention.

recovered from Davis's mouth contained cocaine. Davis sustained minor injuries to his mouth during the struggle. Although the extent of Davis's injuries is disputed, there were no allegations of serious injuries, and nothing supports an allegation of serious injuries. The record does not reflect the mouth injuries warranted any treatment by the medical professionals who treated Davis for the convulsions he suffered later.

Davis was arrested and ultimately indicted for possession with intent to deliver a controlled substance and possession of a controlled substance. The indictment also contained an enhancement paragraph based on Davis's two prior drug convictions. Before trial, Davis filed a motion to suppress the cocaine recovered during the struggle. The trial court held a hearing on the motion, after which it denied the motion. A jury found Davis guilty of simple possession. After the trial court rendered its judgment, Davis perfected this appeal.

## ANALYSIS

In two points of error, Davis contends the trial court erred in denying his motion to suppress. Specifically, Davis argues his motion should have been granted and the evidence suppressed because: (1) the confidential informant was not reliable, and therefore police did not have probable cause, and (2) the officers expanded the scope of the investigation and, by using excessive force, committed an unreasonable search of his body in violation of his Fourth Amendment rights.

### *Standard of Review*

We review the trial court's denial of a motion to suppress under a bifurcated standard of review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). A reviewing court will first "give almost total deference to a trial court's determination of historical facts," and then review the trial court's application of the law de novo. *Carmouche v. State*, 10 S.W.3d 323, 328

(Tex. Crim. App. 2000) (quoting *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997)). If the trial court makes explicit findings of fact, as it did here, it must be determined whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). A trial court's legal ruling is reviewed de novo unless its fact findings, which are supported by the record, are dispositive of the legal ruling. *Id.* A trial court's ruling on a motion to suppress will be upheld if there is any valid theory of law applicable to the case, even if the trial court did not base its decision on that theory. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

### *Application*

Davis first contends the unreliability of the informant precludes a finding of probable cause. Davis contends the informant was not reliable because he had no prior relationship with Detective Burke, had a criminal history, and likely received special treatment in exchange for his assistance. However, even if Davis is correct that the informant was unreliable and could not establish probable cause, the trial court did not err in denying the motion to suppress because there was sufficient evidence presented to the trial court to establish Davis committed the offense of drug possession within the presence of the police officers, thereby establishing probable for the officers' actions.

Generally, an arrest or search without a valid warrant is unreasonable. *Wilson v. State*, 621 S.W.2d 799, 803-04 (Tex. Crim. App. 1981). However, an officer may make a warrantless arrest or search if (1) there is probable cause, and (2) the arrest falls within the provision of one of the statutes authorizing it. *See Anderson v. State*, 932 S.W.2d 502, 506 (Tex. Crim. App. 1996). Probable cause exists for a warrantless arrest when "at that moment the facts and circumstances within the officer's knowledge and of which he had sufficient trustworthy

information were sufficient to warrant a prudent man in believing the arrested person had committed or was committing an offense." *Johnson v. State*, 32 S.W.3d 294, 298 (Tex. App.— San Antonio 2000, no pet.). This test considers whether in light of "all the facts and circumstances including the veracity and basis of knowledge of persons supplying hearsay information, a fair probability exists that contraband or evidence of a crime will be found in a particular location." *Rodriguez v. State*, 838 S.W. 2d 780, 782 (Tex. App.—Corpus Christi 1992, no pet.).

Article 14.01 of the Texas Code of Criminal Procedure authorizes an officer to arrest "an offender without a warrant for any offense committed . . . within his view." TEX. CODE. CRIM. PRO. ANN. art. 14.01 (West 2005). The officer must have more than a "hunch" or "mere suspicion" and the acts the officer views must be "out of the ordinary, suspicious, and tie a subject with a criminal act." *Johnson*, 32 S.W.3d at 298.

Here, Officer Ramos testified he was given a location, vehicle description, and suspect description in connection with possible drug activity. Moments after arriving at the location, Officer Ramos and his partner saw Davis arrive in a car matching the description. The fact that the officers had specific information which they verified can be enough to establish probable cause. *Id*. Here, the officers obtained more information based on their personal observations.

Officer Ramos stated that immediately upon seeing the officers, Davis acted nervously, quickly entering the convenience store wherein he began shoving packages containing a white substance into his mouth. Officer Ramos testified that based on his training and experience he believed the substance in the packages to be cocaine.

We hold the testimony of Officer Ramos was sufficient to establish probable cause. *See Dixon v. State*, 206 S.W.3d 613, 617-18 (Tex. Crim. App. 2006) (noting "wealth of verifiable

details" established probable cause). Officer Ramos verified the information he was given regarding the suspect and his vehicle, observed Davis's nervous reaction upon seeing the officer and his attempt to avoid officers by entering the store, and then saw Davis attempting to dispose of a package containing a white substance, which Officer Ramos's training and experience led him to believe was cocaine. *See, e.g., Guzman*, 955 S.W.2d at 90 (stating court has upheld arrests under article 14.01 when officers' personally observed behavior, though not overtly criminal, was, when coupled with the officers' prior knowledge, sufficient to establish probable cause that a crime was occurring). We hold Officer Ramos's verification of the information, coupled with his observation of a crime in his presence was sufficient to establish probable cause to search without a warrant.

Moreover, we hold the "emergency doctrine" exception to the warrant requirement supported Officer Ramos's actions. This court stated in *Johnson* that "exigent circumstances will justify a warrantless search for the purpose of preventing the imminent destruction, removal, or concealment of evidence or contraband." *Johnson*, 32 S.W.3d at 299. The evidence showed Davis attempted to swallow and destroy what Officer Ramos believed, based on his experience and training, to be evidence of a crime. Therefore, the officers were justified in searching Davis's person. *See id.* Officer Ramos's actions are also exempted from the warrant requirement under the "emergency doctrine" because his actions prevented Davis from swallowing the "baggies" of cocaine and possibly overdosing. *See Bray v. State*, 597 S.W.2d 763, 764 (Tex. Crim. App 1980) (stating "[a] warrantless search may be justified by a need to act immediately to protect or preserve life or to prevent serious injury").

Regardless of the reliability of the confidential informant, Davis committed the crime of possession in Officer Ramos's view, which was sufficient to establish probable cause. In

addition, the imminent destruction of evidence and prevention of injury to Davis were exigent circumstances permitting a search in the absence of a warrant under the "emergency doctrine." We therefore hold the trial court did not abuse its discretion in denying the motion to suppress.

Using the standard of review stated above, we also find Davis's argument that the officers unconstitutionally expanded the scope of the investigation and committed an unreasonable search of his body and seizure of the drugs from his mouth by using excessive force to be without merit.

When reviewing a challenge to a seizure under the Fourth Amendment in which the defendant asserts the use of excessive force, we use an objective balancing test, comparing the individual's interests with the public's interests, and evaluate when, where, and how the seizure was carried out. *See Hereford v. State*, 339 S.W.3d 111, 119 (Tex. Crim. App. 2011). The proper inquiry for the reviewing court is whether, given the facts supported by the record, the force that was used to seize the evidence was objectively reasonable. *Id*. at 120.

In *Hereford*, an officer used a Taser on a hand-cuffed suspect in an effort to remove drugs from the suspect's mouth. *Id.* at 116. The Taser was used long after the suspect was seen placing drugs in his mouth, after the officers' safety concerns had dissipated, after the suspect had been taken to the hospital, and after the initial tasing proved unsuccessful. *Id.* Moreover, the officer tased the suspect at least eight times and discharged the Taser on the suspect's groin area. *Id.* The Texas Court of Criminal Appeals found these circumstances showed an excessive use of force, rendered the seizure unreasonable, and held it violated the defendant's Fourth Amendment rights. *Id.* at 126.

However, in *Hernandez v. State*, 548 S.W.2d 904 (Tex. Crim. App. 1977), the court found the officer's use of force was reasonable. In *Hernandez*, much as here, officers saw the

defendant put his hand to his mouth as they approached him. *Id.* at 905. Believing, based on their experience, that the defendant was attempting to hide drugs, the officers wrestled the defendant to the ground. *Id.* One officer held the defendant down on the ground, while the other choked the defendant until he spit out the drugs. *Id.* The court held that "when an officer has probable cause to believe an offense is being committed in his presence, he has the right to take reasonable measures to insure the incriminating evidence is not destroyed and reasonable physical contact is one of these measures." *Id.* Simply put, in *Hernandez* the court found holding a suspect down and choking him in order to remove drugs from his mouth to be reasonable.

The officers' actions in this case are less excessive than those found reasonable in *Hernandez*, and are far less extreme than those used and found excessive in *Hereford*. Officer Ramos saw Davis place what he believed to be drugs in his mouth in an attempt to conceal or destroy evidence. At that point, the officer grabbed Davis and applied pressure to Davis's jaw while ordering him to open his mouth. The officer testified the technique of applying pressure to Davis's jaw was in compliance with what he was taught at the police academy. Within moments of applying pressure, Officer Ramos successfully recovered one of the packages from Davis's mouth by scooping them out with his pen. The other package was removed moments later. The entire incident lasted only minutes.

Officers often "make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Although using a pen to assist in removing the drugs from Davis's mouth was not a standard procedure, we hold it was reasonable under the circumstances because Officer Ramos could see the package in Davis's mouth, could remove it

without significant injury to Davis, and Davis refused to comply with orders to open his mouth. Davis sustained no significant injuries to his mouth as a result of the struggle with police. Although he later appeared to suffer convulsions and was taken to the hospital, there was no evidence presented to establish the removal of the drugs from his mouth was the cause of the convulsions. Therefore, we hold the officers' actions in seizing the cocaine from Davis were reasonable under the circumstances and we overrule his second point of error.

## CONCLUSION

Based on the foregoing, we overrule Davis's complaints and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish